COMMISSIONER OF INTERNAL REV-
ENUE v. ADOLPH HIRSCH &
CO., Inc.

Circuit Court of Appeals, Second Circuit.
February 4, 1929.

No. 143.

Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key and Andrew D. Sharpe, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Clark T. Brown, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Meyer Bernstein, of New York City, for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The respondent was incorporated under the laws of the state of New York on August 18, 1919. The Brazilian Rubber Plantation & Development Company was also incorporated in New York on July 6, 1919. Both corporations had their place of business at a common address in New York City. Adolph Hirsch and his brother were engaged as partners in business as importers from South America, having branches there. Adolph Hirsch had a 60 per cent. interest in the firm and his brother 40 per cent. They then incorporated in 1919 as Adolph Hirsch & Co., Inc.; 15 per cent. of the stock was transferred to their nephew. The capital stock was $400,000. The assets and liabilities of the partnership were transferred to the corporation. The Brazilian Company was engaged in working plantations in Brazil. Prior to its incorporation, title to this plantation was in the name of Adolph Hirsch. It was incorporated for 20,000 shares, of the par value of $100, and was issued as follows: 67.85 per cent. to Adolph Hirsch, 27 per cent. to his brother, and 5.15 per cent. to his nephew. In 1920 there was an aggregate of 4,240 shares, owned and controlled as follows: Adolph Hirsch, 43.47 per cent.; his brother 13.21 per cent.; the Bloomberg family and others, 44.37 per cent. The affairs of the Brazilian Company were handled by the Hirsch brothers, first through the partnership and later through the corporation Adolph Hirsch & Co., Inc. No regular set of books were kept regarding the affairs of the Brazilian Company; that is, there was no ledger, cash book, or sales book, and since 1913 it had no separate bank account.

All activities were commenced and managed entirely by the Hirsch Company; funds necessary for the conduct of the affairs of the Brazilian Company were advanced by the Hirsch Company by cable, by transferring or opening a bank credit against which a draft would be made by people in Brazil. Sales were made through and in the name of the Hirsch Company, and the proceeds were credited on the books of the Hirsch Company. In a word, the Brazilian Company was conducted as a department of the Hirsch Company's business. No stock of either company was sold to the general public. Mr. Bloomberg was the personal attorney of the Hirsch brothers, and had been intimately associated with them for years, and was the attorney who incorporated the Brazilian Company.

The Commissioner refused to permit the two corporations to file a consolidated return for the year 1920, upon the claim that they were affiliated corporations, within the provisions of section 240 (b) of the Revenue Act of 1918 (40 Stat. 1081), and assessed a deficiency of $12,386.24. This result was reversed by the Board of Tax Appeals, which held there was affiliation and determined the deficiency to be $2,364.01. This difference is the amount of tax involved on this appeal.

Section 240(b) provides that "two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others; or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

██ The Hirsch brothers owned together 94.-85 per cent. of the shares of stock of the respondent and 55.63 per cent. of the Brazilian Company. We may regard the Hirsch brothers as of the same "interest." "Substantially all" was not intended to be interpreted as being any particular percentage, but must be applied to the particular facts of each case. We held in Ice Service Corp. v. Commissioner of Internal Revenue, 30 F.(2d) 230, decided January 7, 1929, that 75 per cent. was not a control of "substantially all" of the stock. In the Revenue Acts of 1924, 1926 (section 240 (c), 43 Stat. 253, 44 Stat. 9; 26 USCA § 993(c), and 1928 (sections 141 (d), 142 (c), Pub. No. 562, 70th Congress; 26 USCA §§ 2141(d), 2142(c), Congress has substituted for "substantially all" of the stock the words "at least 95 per cent. of the stock." It was the apparent intent of Congress that the test of unity of control of substantially all the stock of the corporation depended upon whether there could be made intercompany arrangements affecting invested capital or net income of the separate members and thus enable them to be considered as a unity. Congress recognized that an equitable and convenient way of dealing with such a situation was to treat a group of corporations thus controlled as a business unity, and hence to provide for a consolidated return. A consolidated return can be carried out, where there are no conflicting interests among the stockholders and, as affiliated corporations, they are required to file a consolidated return of the net income and invested capital, and the tax-

es are computed and determined on the basis of such return and assessed in the first instance as a unit. Thus the corporate entity can be disregarded only where there is no divergent interest among the stockholders.

██ Stockholders of two or more corporations, if the same persons, and their holdings in different corporations are in the same proportion, bear the ultimate burden of taxes equally and equitably, regardless of whether it rests primarily upon one or the other of the affiliated corporations, if only such corporations be deemed affiliated, but it is where the proportions of the stockholders are different that inequities result. The Brazilian Company appears to have stockholders to the extent of 43.37 per cent. who own no stock in the respondent. These stockholders would suffer disadvantages and might receive benefits through the operations of the respondent, in which they have no interest or representation. Thus there is no fair basis of affiliation of ownership, and there is no control of substantially all of the stock by the same interests. Montana Mercantile Co. v. Rasmusson (D. C.) 28 F.(2d) 916; Alameda Inv. Co. v. McLaughlin (D. C.) 28 F.(2d) 81; Appeal of Gould Coupler Co., 5 B. T. A. 515. The management of the business of the corporation is not the control required by the statute. It refers to stock control. The fact that the minority is acquiescent, and permits the majority to manage the business, does not prove actual control over the minority interest. Nor does a control based upon friendship or professional relations satisfy the statute. The control of the stock owned by the same interest refers to beneficial interest. This meaning is consistent with the purpose of the statute to extend to those subject to the hazard of the enterprise, when they are substantially one and the same, the benefit of the consolidated reports.

Because the minority stockholders of the Brazilian Company hold no stock in the respondent, in no way was the stock of the minority of that company controlled within the proper statutory acceptation of that term. The necessary stock ownership or control required by the statute not existing in the present case, it was error for the Board of Tax Appeals to hold that the respondent and the Brazilian Company were affiliated corporations entitled to file a consolidated return.

The order is reversed, with directions to assess the tax in accordance with this opinion.