## AMERICAN AUTO TRIMMING CO., MICHIGAN, et al. v. LUCAS, Commissioner of Internal Revenue.

Court of Appeals of District of Columbia. Argued November 14, 1929. Decided January 6, 1930.

No. 4877.

802

George E. H. Goodner, of Washington, D. C., for appellants.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, Sewall Key, and John H. McEvers, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Board of Tax Appeals, reported in 6 B. T. A. 1007.

It is contended, first, that the Board erred in holding that the five appellant companies were not affiliated for the years 1918 and 1919 within the purview of section 240 of the Revenue Act of 1918 (40 Stat. 1057, 1081); second, that the Board erred in holding that appellant American Auto Trimming Company of Michigan did not sustain a loss of $45,700.82 in 1918 or 1919 upon a note of the Saxon Motor Car Company; third, that the Board erred in considering the cross-examination by deposition of various witnesses whose examinations in chief were introduced in evidence by appellants, but whose cross-examination was not offered in evidence; and, fourth, that the Board erred in finding and asserting deficiencies against the American Auto Trimming Company of Ohio in 1918 and 1919 when no notice of any deficiencies had been mailed to that company.

■ Appellant companies had the same officers, and one office in Detroit served all. Mr. Benjamin Godfredson was president and M. H. Coleman was secretary and treasurer of each. No regularly called stockholders' meetings were held. Minutes were written up at the Detroit office at the direction of Mr. Godfredson and signed by the officers. None of the stock of any of the companies was ever actually voted. The president personally directed the business policies of all the companies. No officer or employee attempted to oppose his will and decision in the management of the companies. Mr. Godfredson controlled substantially all the stock of the Horse Company, the Realty Company, and the Land Company, but only 75 per cent. of the stock of the American Auto Trimming Company of Detroit, Mich., and between 82½ and 87½ per cent. of the American Auto Trimming Company of Cleveland, Ohio. Frank H. Joyce owned 25 per cent. of the stock of the Detroit company and 12½ per cent. of the stock of the Cleveland company, but none of the stock of the other three companies.

In our view, the Board correctly ruled that the Detroit and Cleveland companies were affiliated in one group, and the Horse Company, the Realty Company, and the Land Company in another group.

Section 240(b) of the Revenue Act of 1918 (40 Stat. 1057, 1082) provides: "For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) * * * or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

Article 633 of Treasury Regulations 45, Revenue Act of 1918 (1920 Ed.) defines "the same interests" as meaning "the same individual or partnership or the same individuals or partnerships," and provides further: "But when the stock of two or more corporations is owned or controlled by two or more individuals or by two or more partnerships a consolidated return is not required unless the percentage of stock held by each individual or each partnership is substantially the same in each of the affiliated corporations."

■ Notwithstanding this administrative interpretation of the term "the same interests," Congress continued to use the term in the subsequent Revenue Acts of 1921 (42 Stat. 227), 1924 (43 Stat. 253), and 1926 (44 Stat. 9). It may be assumed, therefore, that the administrative interpretation met with congressional approval. Paducah Wa-

ter Co. v. Commissioner of Internal Revenue, 59 App. D. C. ——, 33 F.(2d) 559; Corning Glass Works v. Commissioner of Internal Revenue, decided Dec. 2, 1929, 59 App. D. C. ——, 37 F.(2d) 798; New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 S. Ct. 272, 50 L. Ed. 515; National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496; Uniform Printing & S. Co. v. Commissioner of Internal Revenue (C. C. A.) 33 F.(2d) 445.

■ The provision for permitting consolidated returns is based upon the theory that common stockholders of two or more corporations whose holdings are substantially the same in each bear the ultimate burden of taxes equally and equitably, regardless of whether it rests primarily upon one or the other of the affiliated corporations. Commissioner of Internal Revenue v. Adolph Hirsch & Co. (C. C. A.) 30 F.(2d) 645, 646; Goldstein Bros. Amusement Co. v. White (D. C.) 33 F.(2d) 787. That no officer or employee attempted to oppose the will of Benjamin Godfredson in the management of the companies is not controlling. "The management of the business of the corporation is not the control required by the statute. It refers to stock control. The fact that the minority is acquiescent, and permits the majority to manage the business, does not prove actual control over the minority interest. Nor does a control based upon friendship or professional relations satisfy the statute. The control of the stock owned by the same interest refers to beneficial interest. This meaning is consistent with the purpose of the statute to extend to those subject to the hazard of the enterprise, when they are substantially one and the same, the benefit of the consolidated reports." Commissioner of Internal Revenue v. Adolph Hirsch & Co. (C. C. A.) 30 F.(2d) 645, 646. See News Pub. Co. v. Blair, 58 App. D. C. 295, 29 F.(2d) 955.

■ One of the principal customers of the American Auto Trimming Company of Detroit was the Saxon Motor Car Company (hereinafter called the Saxon Company), to which the Detroit Company had made large sales on open account. In 1917 the Saxon Company became financially involved, and a creditors' committee was appointed to take over its business. Benjamin Godfredson, as president of the Detroit company, one of the insolvent company's largest creditors, was appointed a member of the committee, and later made president of the insolvent

company. Under direction of the committee, the Saxon Company gave a note to the Detroit company in the amount of $72,429.76, payable November 1, 1917, in full settlement of its account. At the maturity of the note, payment of $7,242.98 was made on the principal, and a new note was given for the balance. During 1918 the Saxon Company plant was leased on very favorable terms to the United States government for war purposes, which enabled it to curtail its note in the amount of $14,485.97, leaving a balance due of $50,700.82. Upon the signing of the Armistice (November 11, 1918), Mr. Godfredson, who was thoroughly familiar with conditions, concluded that the government would not longer lease the Saxon Company plant, and that, owing to its location, it would be difficult to sell it. Having in mind these circumstances, Mr. Godfredson therefore concluded that the American Auto Trimming Company of Detroit would never realize over $5,000 on the Saxon Company note. He therefore purchased the Saxon Company note for $5,000, and the company accepted payment and assigned its claim to him. The balance of the note was charged off as a loss in 1918.

During the year 1919 the Saxon Company plant was sold to the General Motors Corporation at an advantageous figure. When it became apparent to Mr. Godfredson that more would be realized on the Saxon Company note (which he had taken over in 1918) than he had then thought possible, he reassigned his claim to the American Auto Trimming Company of Detroit for the amount he paid for it. Thereafter the American Auto Trimming Company of Detroit received on the note, in August, 1919, a payment of $10,140.16, and in September, 1919, $12,168.20, leaving an unpaid balance of $28,392.46.

In our view, the Board erred in failing to find that there was a sale of the Saxon Company note to Godfredson in 1918. In the circumstances, it was a reasonable and, as then appeared, equitable transaction. Its purpose undoubtedly was to enable the Detroit Company to close its account with the Saxon Company. Godfredson's good faith is shown by his voluntary reassignment of the claim to the Detroit company, when conditions so changed as to make it apparent that more would be realized on the note than appeared possible when it was assigned to him for $5,000. We see no reason under the evidence for doubting the good faith of the transaction.

■ The Board considered testimony by deposition of witnesses upon cross-examination, "which testimony (the record discloses) was not offered in evidence at the trial before the Board of Tax Appeals." This was error. Section 907(a) of the Revenue Act of 1926 (44 Stat. 9, 107), provides, in part: "The proceedings of the Board and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Board may prescribe and in accordance with the rules of evidence applicable in courts of equity of the District of Columbia." Under the rules of evidence applicable to courts of equity in the District of Columbia, parts of a deposition may be offered in evidence, provided they are coherent and not fragmentary. Bernhardt v. City & S. Ry. Co., 49 App. D. C. 265, 263 F. 1009. Parts of the depositions considered by the Board were never in evidence, and should not have been considered. But no harm resulted to appellants, since, in our view, the testimony of these witnesses on cross-examination did not materially differ from their testimony in chief.

■ The filing of a consolidated return by the Detroit and Cleveland companies was an assertion and an admission of identity of interest. Their situation was not unlike that of joint contractors, "so that notice to either was notice to both." Tevis v. Ryan, 233 U. S. 273, 287, 34 S. Ct. 481, 487, 58 L. Ed. 957. The two companies occupied a common office, had the same officers, and both appealed from the determination of the Commissioner and from the decision of the Board of Tax Appeals. In our view, the requirements of section 274(a) of the Revenue Act of 1926 (44 Stat. 55 [26 USCA § 1048]) were satisfied when notice was mailed to the Detroit company.

Affirmed in part; reversed in part.