## HANDY & HARMAN v. COMMISSIONER OF INTERNAL REVENUE.

No. 56.

Circuit Court of Appeals, Second Circuit. Jan. 5, 1931.

Breed, Abbott & Morgan, of New York City (Hugh S. Williamson, of New York City, and Paul L. Peyton, of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and John H. McEvers, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Handy & Harman is a New York corporation. Hamilton & De Loss, Inc., is a Connecticut corporation. The issue presented by this appeal is whether from January 1, 1918, to February 1, 1919, they were affiliated corporations within the meaning of section 240 (b) of the Revenue Act of 1918 (40 Stat. 1057, 1082). The Commissioner ruled against affiliation, and denied the use of consolidated returns in determining the petition-

er's taxes for the years in question. His action was confirmed by the Board, whose findings of fact and opinion are reported in 17 B. T. A. 980.

Six men owned 93.71 per cent. of the stock of Handy & Harman, the remaining shares being owned by employees and most of them being held subject to the corporation's option to repurchase should the shareholder leave its employ. The same six men also owned, in somewhat different proportions, 76.66 per cent. of the stock of Hamilton & De Loss, Inc. An additional 20 per cent. of the stock of this corporation stood in the name of H. H. Hamilton, who was not a stockholder in Handy & Harman. It is the contention of petitioner that Hamilton's stock was owned or controlled by Harry De Loss, who was one of the six men owning shares in both corporations. Unless this was so, concededly there was a failure to prove affiliation within the statutory definition requiring "substantially all" of the stock of the two corporations to be "owned or controlled by the same interests." See Ice Service Co. v. Commissioner, 30 F.(2d) 230 (C. C. A. 2); Commissioner v. Adolph Hirsch & Co., 30 F.(2d) 645 (C. C. A. 2).

The contention that Mr. De Loss did own or control Mr. Hamilton's stock is based upon the facts now to be stated. Hamilton & De Loss was caused to be organized by the officers and majority shareholders of Handy & Harman to take over a department of the latter's silversmithing business. Mr. Hamilton, a man of experience in silversmithing, was invited to become president of the new corporation. He was without funds to purchase shares, and Mr. De Loss made arrangements with a bank whereby Hamilton borrowed the necessary money upon his notes indorsed by De Loss. Hamilton executed an "irrevocable stock power," assigning his stock in Hamilton & De Loss to Robert M. Higgins, who in turn executed a similar instrument assigning the stock to De Loss, "who deposited it as collateral security for the notes." Hamilton never paid anything upon the notes. In 1919 he became insolvent, and on February 1, 1919, De Loss paid the notes and "took over" the stock. Prior to the last-mentioned date, Hamilton attended all stockholder's meetings of Hamilton & De Loss and always voted his stock in harmony with the men who controlled both corporations. Hamilton received a salary from Hamilton & De Loss, but its other directors and officers were also officers or employees of Handy & Harman and received their compensation solely from the latter corporation, even though all or a large part of their working hours were devoted to the former. On these facts the Board held that Hamilton's stock was not owned or controlled by De Loss prior to February 1, 1919, and the correctness of that ruling is the issue before us.

It is consistent with the findings and the evidence that the indirect assignment of Hamilton's shares to De Loss was as security for the latter's indorsement of Hamilton's notes. Indeed, we do not understand it to be claimed that the assignment made De Loss the beneficial owner; nor, if such were the claim, do we think the evidence would support it. De Loss testified "that he endorsed the notes given by Hamilton and the stock which was issued to Hamilton was immediately assigned to him and deposited with the bank as collateral security for the payment of the notes." Why the assignment was made through Higgins does not appear. We regard the transaction as a pledge by Hamilton to De Loss and a repledge by him to the bank. It can hardly be doubted that, had Hamilton paid his notes, De Loss' interest in the stock would have terminated. Hence De Loss did not "own" Hamilton's shares, and the question is narrowed to whether he "controlled" them.

In United States v. Cleveland, P. & E. R. Co., 42 F.(2d) 413 (C. C. A. 6), Judge Mack thoroughly reviewed the legislative history of the statute in question and the judicial decisions which have construed it. His opinion demonstrates that the courts are not in accord as to the meaning to be given to the word "control" in determining whether or not affiliation exists. One line of cases holds that, when the corporations are operating as a business unit, actual control of the voting power of the minority stock is sufficient, though based on revocable proxies, relationships of blood or friendship, or perhaps even mere acquiescence of the minority. To the authorities cited by Judge Mack as upholding this view may be added the later cases of Kile & Morgan Co. v. Commissioner, 41 F. (2d) 925 (C. C. A. 1); J. Rogers Flannery & Co. v. Commissioner, 42 F.(2d) 11 (C. C. A. 3); Commissioner v. Richfield Oil Co., 42 F.(2d) 360 (C. C. A. 9); Eby Shoe Co., Inc., v. United States, 44 F.(2d) 273 (Ct. Cl.). If this view be accepted, it can scarcely be doubted that Hamilton's stock was "controlled" by De Loss and his associates.

The other line of cases adopts a narrower interpretation, and holds that, if "con-

trol" means something different from ownership of stock, it must at least be a control legally enforceable. See authorities cited in United States v. Cleveland, P. & E. R. Co., supra. This court is already committed to the narrower view, Commissioner v. Adolph Hirsch & Co., supra; and we are disposed to adhere to it until an authoritative voice declares it wrong. It is impossible to say that De Loss had a legally enforceable control of Hamilton's shares before he paid the note and "took over" the stock. We may assume, without deciding, that a pledgee who is the registered shareholder upon the books of the corporation "controls" the shares. Cf. Lavenstein Corp. v. Commissioner, 25 F.(2d) 375 (C. C. A. 4). If we go further and assume that a pledgee of the shares who has the power to get them registered in his name "controls" them even before the power is exercised, De Loss still falls short. See Appeal of Iron City Electric Co., 4 B. T. A. 1178. The Board found that he "deposited" the stock with the bank as collateral security for the notes. We can scarcely believe that this means that he did not transfer to the bank the same title that he himself had received as security for his indorsement; but, even if the certificates were merely "deposited," without the execution of an assignment to the bank, his situation is no better. If, as seems probable, the security title was transferred to the bank, then it had whatever "control" belongs to a pledgee; if, on the other hypothesis, the certificates were merely deposited without assignment, this too would disable De Loss from getting the shares registered in his name, for only upon presentation of the old certificates would the corporation issue new ones, and the old ones could not be reclaimed from the bank without payment of the notes. Therefore, until the notes were paid, De Loss did not have the rights of a pledgee who is in possession of stock certificates with the power of having them immediately registered in his name, even if it be assumed that the "control" of such a pledgee would be sufficient.

The moral control arising from the pressure which could be put on Hamilton to make him vote with De Loss and his associates is not, we think, the thing expressed by the statute. There must be the legal power through ownership or control of substantially all the stock to direct the policies of both corporations for affiliation to exist. As to Hamilton's stock, that was lacking.

Accordingly, we think the Board was right, and its orders are affirmed.