## COMMISSIONER OF INTERNAL REVENUE v. CITY BUTTON WORKS.

### No. 308.

Circuit Court of Appeals, Second Circuit.

May 4, 1931.

G. A. Youngquist, Atty. Gen., and Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Donald Horne, of New York City, for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The sole question at issue is whether the respondent, City Button Works, was affiliated with another corporation, Rothschild Brothers & Co. The Commissioner held that it was not and taxed it accordingly. The Board held otherwise and the Commissioner has appealed. The facts are as follows:

One, Ludwig Rothschild, organized and held substantially all the shares of stock in the City Button Works, a manufacturing company of New York. He also had a mercantile business, unincorporated, which he conducted under the name of Rothschild Bros. & Co., and which took most of the output of the City Button Works; though the corporation made some things he did not buy, and he bought some things it did not make. Upon his death his wife and children, who were his legatees, received all the shares of the City Button Works, and organized the mercantile business as a corporation under the old name.

On January 1, 1921, the shares in the City Button Works were all still held by his wife and children, except a single share of one, Heiden, his brother-in-law. The shares of the Rothschild corporation were also held by the wife and children in the same proportion as those of the City Button Works, but Heiden had one hundred shares and employees two hundred and ten. The total shares of the City Button Works were one thousand and of the Rothschild corporation, twenty-five hundred and sixty, so that the shareholders of the first held eighty-eight per cent. of the shares of the second. Thereafter the family determined that the wife and daughters should surrender their common shares in the Rothschild Company and take preferred shares. These were to have the first five per cent. out of the income, as a preferred dividend, the common shares the next five per cent., then the common and preferred shares were to share equally up to ten per cent., and the common to receive any remainder. The preferred shares had no power to vote.

The change was completed by February twenty-first, at which time the wife and daughters had all the preferred shares, except fifty, held by Heiden, and one hundred and ninety-nine held by employees. The two sons and Heiden had all the common shares except one hundred and fifty-five held by employees. If the common shares alone of the Rothschild Company are counted, the shareholders of the City Button Works holding shares in the Rothschild Company held eighty-six and a half per cent. of those shares, but less than twenty-eight per cent. of the City Button Works shares. If the preferred shares are counted, the shareholders of the City Button Works holding shares in the Rothschild Company held ninety-one per cent. of those shares, and while the percent-

ages were different in the case of Heiden, they were substantially the same in the case of the wife and children. One of the sons, Leo, managed both companies and by oral agreement the wife and daughters had agreed that he should vote their shares in the City Button Works at his pleasure, an agreement invalid by the law of New York. In practice he exercised this right, treating the interests of each corporation as separate, and, at least in the year 1921, throwing no burdens on one to the profit of the other.

We have three times held that the possession of such power by acquiescence of the shareholders does not constitute "control" within the meaning of section 240 (c) of the Act of 1921, 42 Stat. 260. Ice Service Co. v. Com'r (C. C. A.) 30 F.(2d) 230; Commissioner of Internal Revenue v. Hirsch & Co. (C. C. A.) 30 F.(2d) 645; Handy & Harman v. Com'r (C. C. A.) 47 F.(2d) 184. While the last case is now before the Supreme Court on certiorari, 51 S. Ct. 353, 75 L. Ed. ——, we adhere to the doctrine until otherwise advised. Therefore, if the preferred shares of the Rothschild Company be ignored in the count there was no sufficient common control between the two companies and of course no common ownership. The decision must rest upon whether these shares shall be included.

The preferred shares being owned by the wife and daughters, who also owned their common shares in the City Button Works, the only question which can arise is whether they are not to be counted because they had no voting power. They would not be so counted under the Revenue Act of 1924, § 204 (c), 26 USCA § 993 note, which credits only "voting" shares in the reckoning; nor would they under the Revenue Act of 1926, § 204 (d), 26 USCA § 993 (d), which does not count non-voting shares, if the dividends are "limited and preferred." The act of 1921 leaves the question open and without any cue, except such as may be found from its general purpose. So far as the decisions have gone they are apparently not in accord. It was held in Schlafly v. U. S., 4 F.(2d) 195 (C. C. A. 6), that companies could be affiliated in spite of outstanding non-voting shares, and the same was said obiter in Commissioner v. Shillito Realty Co., 39 F.(2d) 830, 69 A. L. R. 1266 (C. C. A. 6). On the other hand, Lavenstein Corporation v. Com'r, 25 F.(2d) 375 (C. C. A. 4), held two companies affiliated though the shares of one were held in pledge by an outsider. It is hard to believe that the same court would have held that there was affiliation in Schlafly v. U. S.,

though the apparent conflict may perhaps be theoretically reconciled.

In any event we need not in this case hold that under no circumstances can common ownership without common voting power result in affiliation. For example, one might suppose two companies whose shareholders held all the common shares of each in equal proportions, but part of the issue of one had no voting power. Perhaps that circumstance would not alone be enough to keep the companies separate, in view of the fact that the income must surely be distributed in equal proportions among all the shares of both companies. However that may be, when as here the distribution is unequal, it appears to us that the section does not apply, for it is not enough that the gross income of each company goes to the same persons. That condition would be fulfilled in a case where half the shareholders held ninety per cent. of the shares in one company and ten per cent. in the other, and the other half, vice versa. It would be a forced construction which should regard such a pair as a single "business unit"; the phrase used in the Senate Committee report upon the section. Not only would the management of each company be in a different group, but the interest of each majority in the respective incomes would be different. On neither score would it accord with general notions to think of the two companies as one.

For this reason the regulations under the Act of 1918 (article 633, Regulations 45) provided that the holdings must be substantially in the same proportions in each company, and the same was repeated under the act of 1921 (article 633, Regulations 62). The enactment of the second statute was a legislative recognition of this regulation. National Lead Co. v. U. S., 252 U. S. 140, 146, 40 S. Ct. 237, 64 L. Ed. 496; Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 74 L. Ed. 457. Non-voting preferred shares also result in a similar divorce between the two companies and probably this was the ground for the amendment of 1926. Having no voting power, they cannot be a means of controlling the two companies, though the shares be held in the same proportions. Perhaps this alone would not be enough, were it not for their divergent interest in the income; as before, we may assume as much arguendo. But, being entitled to a preferred share in the income, they stand on the same footing as though the shares were themselves held disproportionately. The relative interests in the income do not correspond with the share

distribution. Thus, neither of the possible conditions determining affiliation are realized in the case of non-voting preferred shares.

Decision reversed.