**POKORNY REALTY CO. v. UNITED STATES.**

No. L–30.

Court of Claims.

June 6, 1932.

The plaintiff sues to recover the sum of $11,463.69, the amount of alleged overpayments of its taxes for the fiscal years ended, respectively, May 31, 1923, 1924, and 1926.

Plaintiff contends that the taxes for the years in question should be computed on the basis of a consolidated return with two other corporations. The sole issue in the case is whether the plaintiff and the two other corporations are entitled to affiliation during these years.

This case having been heard by the Court of Claims, the court, upon a stipulation of facts, the report of a Commissioner, and the evidence, makes the following special findings of fact:

1. In the year 1860, Michael Pokorny started a customs shoe business in the city of New Orleans. Later the two sons of Michael Pokorny, John and David, conducted the business, under his supervision. They drew no salaries, but lived with their father and had a small weekly drawing account. Thereafter the business became a partnership, consisting of said Michael Pokorny and his two said sons, known as M. Pokorny & Sons. The business was incorporated under the name of M. Pokorny & Sons, Limited, the stock being issued in consideration of the assets of the pre-existing partnership. That corporation has continuously conducted a shoe business since its incorporation.

2. Pokorny Realty Company, plaintiff, is a corporation, organized on the 10th day of May, 1905, under the laws of the state of Louisiana, and during the taxable years here involved was engaged in the real estate business, with principal office in the city of New Orleans.

The authorized capital stock of the plaintiff was $150,000, represented by 1,500 shares of the par value of $100 each, all of which stock was issued for cash upon organization.

3. On July 18, 1902, M. Pokorny & Sons, Limited, was incorporated under the laws of the state of Louisiana, with an authorized capital stock of $45,000, consisting of 450 shares of the par value of $100 each, all of which stock was issued at the time of its organization and full value paid in therefor.

4. On July 27, 1915, the Pokorny Estate, Inc., was incorporated under the laws of the state of Louisiana, with a capital stock of $149,400, consisting of 1,494 shares of the par value of $100 each, all of which stock was issued at time of organization and full value paid in therefor.

5. The stock of the plaintiff and of the other two above-mentioned corporations during all of the times herein mentioned was solely common stock, and all such stock had the usual voting rights.

The operations of the three aforesaid corporations were always conducted harmoniously, with a view to the best interests of the Pokorny family. The stock of the companies was never voted in the strict sense, but all business matters were handled as a result of friendly discussions by the stockholders at family meetings. Money was loaned between them without security or notes and without interest. Part of the business properties are leased among the companies at rentals lower than is charged to outsiders. These conditions existed throughout the period from 1917 to 1926, both inclusive.

6. The stipulation filed herein has appended thereto, Exhibit "A," which, by reference, is hereby made a part of this finding. It is a table, with footnotes, showing the names of the stockholders of the aforesaid M. Pokorny & Sons, Limited, Pokorny Estate, Inc., and the plaintiff, the family relationships existing among said stockholders, the number of shares, and the nature of the interest therein owned by each of said stockholders in each of said corporations during the taxable years ended May 31, 1923, May 31, 1924, and May 31, 1926, and the percentages represented by such ownership.

In addition to the facts regarding stock ownership in M. Pokorny & Sons, Limited, Pokorny Realty Company, and Pokorny Estate, Inc., as hereinbefore disclosed, it is found that David Pokorny acquired twenty shares of stock of M. Pokorny & Sons, Limited, from Mrs. Hanna Pokorny Haas on June 9, 1914.

7. Separate original returns were filed by plaintiff and by each of the two other above-named corporations as follows: For the fiscal year ended May 31, 1923, on July 25, 1923; for the fiscal year ended May 31, 1924, on July 11, 1924; and for the fiscal year ended May 31, 1926, on August 4, 1926.

8. The amount of tax reported on the separate returns filed by plaintiff for its fiscal years ended May 31, 1923, May 31, 1924, and May 31, 1926, with adjustments of plaintiff's tax as determined by the Commissioner of Internal Revenue on a separate basis, together with dates of all payments involved, was as follows:

| Fiscal year ended May 31 | Amount of tax shown by original separate return | Dates and amounts of payment | |
|---|---|---|---|
| 1923 | $5,718.23 | July 28, 1923 | $1,429.56 |
| | | August 15, 1923 | 4,288.67 |
| | | Total | $5,718.23 |
| | | Less overassessment IT: 22431, certificate of overassessment No. 732,265 | 299.03 |
| | | Net tax paid | $5,419.20 |
| 1924 | 5,244.15 | July 14, 1924 | $5,026.04 |
| | | Part of overassessment for 1922, Schedule 21751, dated August 23, 1926, credited | 218.11 |
| | | Total original tax | $5,244.15 |
| | | Additional tax assessed July, 1929 ............ $50.81 | |
| | | Interest thereon ............ 15.03 | |
| | | Paid by application of portion of overassessment for year 1923, Schedule 35258, dated July 29, 1929 | 65.84 |
| | | Total tax, plus interest, paid for 1924 | $5,309.99 |
| 1926 | 6,305.60 | August 9, 1926 | $3,152.80 |
| | | February 8, 1927 | 3,152.80 |
| | | Total | $6,305.60 |
| | | Less overassessment, Schedule 35258, dated July 29, 1929 | 124.47 |
| | | Net tax paid for year 1926 | $6,181.13 |

All assessments and payments were made within the time prescribed by law.

9. If, as a matter of law, the plaintiff was affiliated with M. Pokorny & Sons, Limited, and with Pokorny Estate, Inc., during the fiscal year ended May 31, 1923, but with M. Pokorny & Sons, Limited, only during the fiscal year ended May 31, 1924, and the fiscal year ended May 31, 1926, and if, as a matter of law, the plaintiff is entitled to file consolidated returns with the above-named companies for the respective periods indicated, the resulting tax properly allocable to each of the three companies, on the basis of the ratio of the net income of each to the total net income of the respective affiliated groups, and the resulting refunds due the plaintiff for each year, are as follows:

other than affiliation, and on the same date disallowed the plaintiff's refund claim for said year as referred to in finding 10 above.

Under date of July 31, 1929, the Commissioner of Internal Revenue rejected plaintiff's claims for refund for the fiscal years ended May 31, 1923, and May 31, 1924, as referred to in said finding 10.

12. The charter of the three aforesaid corporations each contained provisions whereby any stockholder who wished to dispose of his stock must offer it for sale to the other stockholders in writing, at a price determined upon a basis specified in said charters; and no shares could be offered to the public until after the elapse of thirty days from such written offer. A notation in pen and ink of the fact that such restrictions on sale were contained

| | Net income | Per cent | Tax | Refund due plaintiff |
|---|---|---|---|---|
| *Fiscal year ended May 31, 1923* | | | | |
| M. Pokorny & Sons, Ltd. | ¹ $37,893.28 | ............. | None. | .............. |
| Pokorny Realty Company | 43,353.58 | 73.656 | $1,746.21 | ² $3,672.99 |
| Pokorny Estate, Inc. | 15,505.90 | 26.344 | 624.56 | .............. |
| | 20,966.20 | 100.00 | 2,370.77 | .............. |
| *Fiscal year ended May 31, 1924* | | | | |
| M. Pokorny & Sons, Ltd. | ¹ 31,887.30 | ............. | None. | .............. |
| Pokorny Realty Company | 42,359.73 | 100.00 | 1,059.05 | ² 4,235.61 |
| | 10,472.43 | 100.00 | 1,059.05 | ³ 15.03 |
| *Fiscal year ended May 31, 1926* | | | | |
| M. Pokorny & Sons, Ltd. | ¹ 24,799.50 | ............. | None. | .............. |
| Pokorny Realty Company | 46,797.18 | 100.00 | 2,641.37 | ² 3,539.76 |
| | 21,997.68 | 100.00 | 2,641.37 | .............. |

¹ Loss.  ² Tax.  ³ Interest.

10. Under date of December 23, 1926, plaintiff filed with the collector of internal revenue at New Orleans refund claims for each of the fiscal years ended May 31, 1923, May 31, 1924, and May 31, 1926, which were accompanied by consolidated returns filed by M. Pokorny & Sons, Limited.

The Bureau of Internal Revenue addressed letters to M. Pokorny & Sons, Limited, under dates of February 28, 1927, and January 24, 1929 (Exhibits "Q" and "R" to stipulation), and on May 31, 1929, said Bureau addressed its letter to plaintiff (Exhibit "S" to stipulation), showing the results of its audit of plaintiff's tax liability for certain years, including the fiscal years of 1923, 1924, and 1926.

11. Under date of July 29, 1929, the Commissioner of Internal Revenue allowed an overassessment of $124.47 to the plaintiff for the fiscal year ended May 31, 1926, on grounds

in the charters of the respective companies appears upon each stock certificate.

13. Ralph P. Levey, who was a stockholder in M. Pokorny & Sons, Limited, and has a reversionary interest in the shares owned by his mother, has been associated with that company for twenty-three years. In addition to being general manager, he became the secretary-treasurer in 1915 and the president as of January 29, 1931.

Mr. Levey was also manager of Pokorny Estate, Inc., and Pokorny Realty Company and in full charge of the activities of the three corporations during the taxable years involved, under power of attorney from the then president, Mrs. Dave Pokorny, and under powers of attorney from, or oral understanding with, other large stockholders.

14. The three corporations filed separate returns for the fiscal years 1917, 1918, and 1919, under the internal revenue laws. In

1919 a revenue agent examined the books of all three companies and suggested that affiliated returns might be accepted. Thereafter the companies' request for leave to have their taxes determined upon a consolidated basis for these years 1917, 1918, and 1919 was denied in letter from the Commissioner of Internal Revenue, dated July 14, 1920. Thereupon briefs were submitted and conferences held, after which the Commissioner of Internal Revenue, in letter dated December 29, 1921, reaffirmed the prior ruling that the companies were not affiliated.

15. For the fiscal year ended May 31, 1920, the three corporations filed a consolidated return, on or before the due date, August 15, 1920; but the Commissioner refused to accept this return as a correct return and requested on a number of occasions the filing of separate returns by each of the three companies for that fiscal year. The companies were directed to file separate returns since they were not "affiliated within the purview of section 240 of the Revenue Act of 1918," or "are not consolidated within the purview of the law and regulations." From those rulings the three companies took an appeal to the committee on appeals and review of the Treasury Department, which on November 22, 1922, held that the ruling of the Income Tax Unit that they were not affiliated and should therefore file separate returns for each of the years 1917, 1918, 1919, and 1920, should be sustained, and the appeal denied. Thereafter, under date of January 30, 1923, the collector of internal revenue at New Orleans again requested separate information returns for the fiscal year ended May 31, 1920, from said companies, requesting that they "forward immediately" such returns. Thereupon, on March 30, 1923, said companies complied with such request and filed separate returns. Prior to such filing said companies had visits from representatives of the Internal Revenue Bureau, during which they were informed that the necessary grounds for affiliation did not exist, and that they should prepare to file returns separately or pay the penalties, but no such visits were received after the separate returns for the year 1920 were filed on March 30, 1923.

16. Thereafter the Commissioner of Internal Revenue audited the separate returns of M. Pokorny & Sons, Limited, Pokorny Estate, Inc., and Pokorny Realty Company for the years ended May 31, 1918, and May 31, 1919, as a result of which a notice of deficiency was addressed to Pokorny Estate, Inc., on May 16, 1925, for the fiscal year ended May 31, 1919. The other two companies did not show deficiencies for those years. Pokorny Estate, Inc., thereupon filed its appeal from such deficiency notice with the United States Board of Tax Appeals on July 14, 1925, the case taking docket No. 5523. The sole ground of that appeal was the denial of affiliation to Pokorny Estate, Inc., with the two other aforesaid companies.

17. Thereafter, under date of December 14, 1925, pursuant to an understanding between the Commissioner of Internal Revenue and counsel for the three companies that affiliation would be granted for the fiscal years ended May 31, 1918, to May 31, 1922, inclusive, the petition was dismissed, and the Commissioner thereupon, on June 14, 1926, issued letters to M. Pokorny & Sons, Limited, and Pokorny Estate, Inc., in which the taxes of all three companies for said fiscal years were recomputed on an affiliated basis and certain claims then on file were disposed of in accordance with the revised computation.

18. Separate returns were filed for the three aforesaid corporations for the fiscal years 1923, 1924, and 1926. A letter from the Commissioner dated June 14, 1926, was not received until long after the returns for the first two years mentioned had been filed. The returns for the fiscal year ended May 31, 1926, were filed on August 4, 1926, prior to the promulgation of the regulations of the Commissioner under the Revenue Act of 1926, on August 28, 1926.

George E. Elliott, of Washington, D. C., for plaintiff.

R. C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Wright Matthews and Warren W. Cole, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, WHALEY, LITTLETON, and GREEN, Judges.

WILLIAMS, Judge.

The plaintiff claims that during the taxable year ending May 31, 1923, it was, within the meaning of the applicable statutes, affiliated with two other corporations, to wit, M. Pokorny & Sons, Limited, and Pokorny Estate, Inc.; that during the taxable years ending, respectively, May 31, 1924, and May 31, 1926, it was affiliated with M. Pokorny & Sons, Limited; and that it is entitled to have its tax liability for those years computed on the basis of such affiliations instead of on

its own separate return, as held by the Commissioner of Internal Revenue.

If plaintiff is entitled to have its taxes for the years in question computed upon the affiliated basis claimed, it has overpaid its taxes for the years 1923, 1924, and 1926, in the sum claimed, which amount it is entitled to recover, together with interest as provided by law.

The applicable provisions of the statutes as to the taxes for the year 1923 are found in section 240, subdivisions (a) and (c) of the Revenue Act of 1921 (42 Stat. 227, 260):

"(a) That corporations which are affiliated within the meaning of this section may, for any taxable year beginning on or after January 1, 1922, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the commissioner. * * *

"(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

Sections 240, subdivisions (a) and (c) of the Revenue Acts of 1924 (43 Stat. 253, 288 [26 USCA § 993 and note]), and 1926 (44 Stat. 9, 46 [26 USCA § 993]) are the applicable statutes for the years 1924 and 1926, respectively; subdivision (a) of the two acts is identical with subdivision (a) of section 240 of the Revenue Act of 1921. Subdivision (c) of the said acts is somewhat changed and reads as follows: "(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the voting stock of the other or others, or (2) if at least 95 per centum of the voting stock of two or more corporations is owned by the same interests. * * * "

The plaintiff was engaged mainly in owning and renting real estate. The business of Pokorny Estate, Inc., was substantially the same as that of plaintiff. M. Pokorny & Sons, Limited, was engaged in conducting retail shoe stores. The capital stock of the plaintiff consisted of 1,500 shares, of the par value of $100 each.

The stock of M. Pokorny & Sons, Limited, consisted of 450 shares of the par value of $100 each.

The stock of Pokorny Estate, Inc., consisted of 1,494 shares, of the par value of $100.00 each.

The stockholders of the three corporations, and the percentage of stock held by them in the respective corporations were:

### Pokorny Realty Company

| | | |
|---|---|---|
| Nanie Haas Pokorny | 30% | |
| Clara M. Pokorny | 20% | |
| Bertha Pokorny Kamien | 20% | |
| | | 70% |
| M. E. Levey | 10% | |
| Coleman E. Adler | 10% | |
| Julius Goldstein | 10% | |
| | | 30% |

### M. Pokorny & Sons, Limited

| | | |
|---|---|---|
| Nanie Haas Pokorny | 37.77% | |
| Clara M. Pokorny | 33.33% | |
| Bertha Pokorny Kamien | 6.67% | |
| | | 77.77% |
| Bella Pokorny Levey | 6.67% | |
| Rosa Pokorny Adler | 6.67% | |
| Leonora Pokorny Goldstein | 6.67% | |
| Ralph Pokorny Levey | 2.22% | |
| | | 22.23% |

### Pokorny Estate, Inc.

| | | |
|---|---|---|
| Nanie Haas Pokorny | 14.86% | |
| Clara M. Pokorny | 14.86% | |
| Bertha Pokorny Kamien | 14.86% | |
| | | 44.58% |
| Bella Pokorny Levey | 14.86% | |
| Rosa Pokorny Adler | 14.86% | |
| Leonora Pokorny Goldstein | 6.67% | |
| Hanna Pokorny Haas | 10.84% | |
| | | 55.42% |

All the stockholders of the corporations involved are members of a single family, being the children, grandchildren, sons-in-law, and daughters-in-law of one Michael Pokorny, deceased. The stock of the corporations was never voted in the ordinary sense, all business matters relating to the conduct of the corporations being arranged as a result of friendly discussions by the stockholders at family meetings. Money was loaned between the various corporations without security or interest, and properties were leased by the corporations from and to each other at rentals lower than that charged to outsiders. The business of the three corporations was conducted as one enterprise.

The majority stockholders owning 70 per cent. of the stock of the plaintiff own 77.77 per cent. of the stock of M. Pokorny & Sons, Limited, and 44.58 per cent. of the stock of Pokorny Estate, Inc. The minority stockholders owning 30 per cent. of the stock of the plaintiff own no stock whatever in either of the other corporations. Minority stockholders owning 22.23 per cent. of the stock of M. Pokorny & Sons, Limited, own no

stock in the plaintiff company. Majority stockholders owning 55.42 per cent. of the stock in Pokorny Estate, Inc., own no stock in the plaintiff. It will be noted there is a wide divergence in the amount of stock held in the three companies by the majority stockholders of plaintiff, Nanie Haas Pokorny holding 30 per cent. of the stock of plaintiff, 37.77 per cent. of the stock of M. Pokorny & Sons, Limited, and 14.86 per cent. of the stock in Pokorny Estate, Inc.; Clara M. Pokorny owning 20 per cent. of the stock of plaintiff, 33.33 per cent. of the stock of M. Pokorny & Sons, Limited, and 14.86 per cent. of the stock of Pokorny Estate, Inc.; while Bertha Pokorny Kamien owns 20 per cent. of the stock of plaintiff, 6.67 per cent. of the stock of M. Pokorny & Sons, Limited, and 14.86 per cent. of the stock of Pokorny Estate, Inc.

It is obvious from this statement of stock ownership that the same interests did not own or control substantially all the stock of each of the three corporations during the year 1923, and that the same interests did not own at least 95 per cent. of the voting stock of each of the corporations or any two of them during the years 1924 and 1926. Handy & Harman v. Burnet, 284 U. S. 136, 52 S. Ct. 51, 52, 76 L. Ed. 207. The Supreme Court in the case cited had under consideration section 240 of the Revenue Act of 1918 (40 Stat. 1081), which is substantially the same as section 240 of the Revenue Act of 1921. The plaintiff corporation urged that it was affiliated with another corporation during the taxable period and in support of its claim contended: (1) That, where two or more corporations are operating as a business and economic unit, actual control of the stock of the minority is sufficient whether or not based on legally enforceable means, and (2) that the word "controlled" as it appears in the statute is unqualified, and that the court below, in restricting that word to be a control based upon legally enforceable means, refused to give to it its accepted meaning and made it practically synonymous with the word "owned." The court rejected these contentions, and held:

"The section requires control of substantially all of the stock; control of the corporations is not enough. The carrying on of a business unit by two or more corporations does not in itself constitute affiliation. * * *

"The purpose of section 240 was, by means of consolidated returns, to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise even though it was conducted by means of more than one corporation. Subsection (b) clearly reflects the intention, by means of such returns, to secure substantial equality as between shareholders who ultimately bear the burden. That intention is shown by the legislative history and was given effect by the regulations contemporaneously promulgated. It requires no discussion to show that such returns will not make against inequality or evasion unless the same interests are the beneficial owners in like proportions of substantially all of the stock of each of such corporations. Alameda Investment Co. v. McLaughlin (D. C.) 28 F.(2d) 81; Montana Mercantile Co. v. Rasmusson (D. C.) 28 F.(2d) 916; Commissioner v. Adolph Hirsch & Co. (C. C. A.) 30 F.(2d) 645, 646; Commissioner of Internal Revenue v. City Button Works (C. C. A.) 49 F.(2d) 705. Affiliation on any other basis would not make against inequality or evasion. It would require very plain language to show that Congress intended to permit consolidated returns to depend on a basis so indefinite and uncertain as control of stock without title, beneficial ownership or legal means to enforce it. Control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute."

The test of affiliation is that the same interests shall be the beneficial owners in like proportions of substantially all the stock of each of the corporations claiming affiliation (Revenue Acts of 1918 and 1921) and of at least 95 per cent. of the voting stock of each of such corporations under the Revenue Acts of 1924 and 1926.

While, as the plaintiff suggests, the question as to whether ownership by members of the same family constitutes the same interests was not present in Handy & Harman v. Burnet, supra, the comprehensive language of the court that "control resting solely on acquiescence, the exigencies of business *or other considerations* having no binding force is not sufficient to satisfy the statute" (italics ours), definitely excludes control of stock on any basis other than beneficial ownership or means to enforce it. The Supreme Court further stated that the intention of the statute was given effect by the regulations contemporaneously promulgated. These regulations were to the effect that ownership by the same interests must be ownership of stock in all the corporations in substantially like proportions.

Article 633 of Regulations 45 provided that: "The words 'the same interests' shall be deemed to mean the same individual or partnership or the same individuals or partnerships, but when the stock of two or more corporations is owned or controlled by two or more individuals or by two or more partnerships a consolidated return is not required unless the percentage of stock held by each individual or each partnership *is substantially the same in each of the affiliated corporations.*" (Italics ours.)

Stock ownership in the corporations involved does not meet the requirements of the statutes, and the plaintiff is not entitled to the relief sought.

The petition will be dismissed. It is so ordered.