**BURNET, Commissioner of Internal Revenue, v. SAN JOAQUIN FRUIT & IN-VESTMENT CO.**

No. 6346.

Circuit Court of Appeals, Ninth Circuit.

June 22, 1931.

G. A. Youngquist, Asst. Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Sewall Key, John H. McEvers, Helen R. Carloss, and E. C. Crouter, Sp. Assts. to Atty. Gen., for petitioner.

Joseph D. Peeler, of Los Angeles, Cal., and George M. Naus, of San Francisco, Cal. (J. R. Sherrod, of Washington, D. C., of counsel), for respondent.

Before RUDKIN, WILBUR and SAW-TELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This is a petition for review of a decision of the United States Board of Tax Appeals. The facts, as stated in the opinion and findings of the Board, are as follows:

"Under date of July 21, 1925, the Commissioner of Internal Revenue sent a deficiency notice to the San Joaquin Fruit & Investment Company of Tustin, California, the petitioner herein, in which he stated:

" 'The determination of your income tax liability for the years 1918 and 1919 has resulted in a deficiency in tax aggregating $111,281.07, as set forth in Bureau letters dated March 9, 1925, and April 22, 1925.'

"In a statement attached to this letter this total deficiency was divided into a deficiency of $66,147.93 for 1918 and a deficiency of $45,133.14 for 1919. Within the proper time after receipt of this letter, the petitioner filed its petition with the Board at Docket No. 6988 in which it alleged four errors; one relating to invested capital, two relating to depreciation and one relating to the use of improper comparatives in special assessment. Thereafter, the respondent filed his answer and the case came on for hearing in Los Angeles, California, at the conclusion of which hearing, upon the petitioner's motion, the case was continued and placed upon the reserve calendar. Following this, the petitioner moved to amend its original petition in order to allege that the petitioner was not in existence during the taxable years and that inasmuch as the Commissioner is not trying to tax it as a transferee, it is not liable as a taxpayer for any alleged deficiency. This motion was granted, and thereafter the respondent filed his answer to the amended petition and the case came on for further hearing. In the original petition the caption was as follows: 'San Joaquin Fruit & Investment Co. (formerly San Joaquin Fruit Co.) Tustin, California.' The petition was verified by the president of the San Joaquin Fruit & Investment Company and in the verification it was stated that the San Joaquin Fruit & Investment Company was the successor to the San Joaquin Fruit Company. The verification of the amended petition was substantially the same.

"Under date of July 27, 1925, the Commissioner mailed a deficiency notice addressed to San Joaquin Fruit & Investment Company, Tustin, California, the petitioner herein, in which he stated:

" 'An audit of your income and profits tax return for the year ended December 31, 1920, has resulted in the determination of a deficiency in tax of $22,872.09, as shown in Bureau letter dated June 16, 1925.'

"Thereafter in due time, the petitioner filed its petition at Docket No. 6989 in substantially the same form as it filed its petition at Docket No. 6988. The Commissioner answered, the case was heard at the hearing in Los Angeles, California, above mentioned, after which it was continued and placed on the reserve calendar, an amended answer was filed raising the question of the identity of the taxpayer just as in the other case, the respondent answered and the case came on for further hearing.

"It appears that in neither of these proceedings is the Commissioner attempting to determine, assess or collect the liability, if any, of the petitioner as a transferee of the San Joaquin Fruit Company, in respect of the tax of that company for the taxable years. Moreover, the alleged taxes in controversy, if they be taxes at all, must be taxes of the San Joaquin Fruit Company, which seems to have been in business during the taxable years. The record shows that the San Joaquin Fruit Company was incorporated in October, 1906, under the laws of the State of California for certain purposes for a term of twenty-five years with a capital stock of $100,000 divided into 1000 shares of the par value of $100 each; on November 6, 1922, at a regular meeting of its board of directors they decided to call a meeting of the stockholders on November 18, 1922, for the purpose of considering and acting upon the proposition to dissolve the corporation, wind up its affairs and dispose of its assets according to law; this meeting of the stockholders was duly held on the 18th day of November, 1922, and from the minutes of that meeting it appears that the San Joaquin Fruit & Investment Company held 807 shares of the stock of the San Joaquin Fruit Company; at this meeting the resolution was adopted to dissolve the corporation, wind up its affairs and distribute the assets according to law; thereafter on the 26th day of December, 1922, a court of competent jurisdiction decreed that the directors of the San Joaquin Fruit Company be made trustees for the dissolution of its assets and the winding up of its affairs and ordered them to distribute the real and personal property to the San Joaquin Fruit & Investment Company and further ordered, adjudged and decreed that the San Joaquin Fruit Company was thereby dissolved; the last paragraph of the decree was as follows:

" 'It is further ordered, adjudged and decreed, that the respective interests of the stockholders of said San Joaquin Fruit Company, have hereinbefore been fixed, namely, there were four stockholders as herein named, three of whom have assigned their whole interest herein unto the said San Joaquin

Fruit and Investment Company, and that now the San Joaquin Fruit and Investment Company is the only stockholder, and the only person to whom said property and assets of said San Joaquin Fruit Company shall be distributed and conveyed.'

"The record further shows that thereafter a copy of the decree was filed in the office of the Department of State of the State of California; the San Joaquin Fruit Company on June 19, 1919, filed its income and profits tax return for the year 1918; on March 15, 1920, filed its return for 1919; on March 15, 1921, filed its return for 1920 and on May 12, 1922, filed its return for 1921; the San Joaquin Fruit and Investment Company was incorporated in July, 1922, under the laws of the State of California, for a period of fifty years, with a capitalization of $1,500,000 divided into 15,000 shares of the par value of $100 each, for certain purposes set forth in its articles of incorporation, which purposes were similar to, but broader and not the same as the purposes set forth in the articles of incorporation of the San Joaquin Fruit Company; under date of December 29, 1927, the Commissioner sent a notice of liability under section 280 of the Revenue Act of 1926 (26 USCA § 1069 and note), to the San Joaquin Fruit & Investment Company as a transferee of the San Joaquin Fruit Company liable for additional taxes of the latter company for the year 1921, following the receipt of which the San Joaquin Fruit & Investment Company filed a petition with this Board at Docket No. 35,835, which proceeding has not been consolidated with the present proceedings and is not being decided in the present proceedings.

"After carefully considering the facts before us we are satisfied that the petitioner has made out a prima facie case, which has not been overcome by the respondent, which prima facie case shows that the petitioner was not in existence during the taxable years and that the tax liability which the Commissioner is trying to establish against the petitioner is not its tax liability. Therefore, for the years 1918, 1919 and 1920 an order of no deficiency will be entered.

"The situation in regard to the year 1921 is somewhat different. For that year, under date of September 1, 1926, the Commissioner sent a deficiency notice addressed to the 'San Joaquin Fruit Company % San Joaquin Fruit and Investment Company, Tustin, California,' in which he stated:

" 'An audit of your income and profits tax return for the calendar year 1920 has resulted in the determination of a deficiency in tax of $21,867.40 as shown in Bureau Letter dated July 20, 1926.'

"The letter of July 20, 1926, was addressed in the same way. On October 25, 1926, at Docket No. 20,801, a petition was filed under the title of 'San Joaquin Fruit & Investment Company (formerly San Joaquin Fruit Company)'. The petition was verified by the president of the San Joaquin Fruit & Investment Company, which verification stated that the San Joaquin Fruit & Investment Company was the successor to the San Joaquin Fruit Company. Errors were set forth in this petition which were similar to the errors set forth in the abovementioned two petitions. The respondent filed his answer. The hearing at Los Angeles, California, covered this case also, at the conclusion of which hearing this case was continued and placed on the reserve calendar and came on for further hearing with the other three cases, all three of which cases were consolidated for hearing and decision by an order of the Board. At the last hearing the petitioner moved to amend its petition in this case as he had theretofore done in the other two cases and for the same purposes. On this motion, which was objected to by counsel for the respondent, we have taken no action.

"Upon consideration of the circumstances in connection with this proceeding at Docket No. 20,801, we are of the opinion that the deficiency notice in question was sent to the San Joaquin Fruit Company in connection with its tax liability for the year 1921 and that the deficiency notice was not a notice to the San Joaquin Fruit & Investment Company corporation, which filed the petition herein and was not a notice of the determination of its tax liability for any year, and that neither the San Joaquin Fruit & Investment Company, its president, who verified the petition, nor counsel, who prepared and signed the petition, had proper authority or purported to act for the San Joaquin Fruit Company. The petitioner herein not being the taxpayer within the meaning of the section of the Revenue Act giving the Board jurisdiction to hear and decide proceedings, we have no jurisdiction in this proceeding and therefore dismiss the same. Bisso Ferry Co. v. Com'r of Internal Revenue, 8 B. T. A. 1104; Bond, Inc., v. Com'r of Internal Revenue, 12 B. T. A. 339; American Arch Co. v. Com'r of Internal Rev-

126

enue, 13 B. T. A. 552; Weis & Lesh Manufacturing Co. v. Com'r of Internal Revenue, 13 B. T. A. 144; Sanborn Brothers v. Com'r of Internal Revenue, 14 B. T. A. 1059; Carnation Milk Products Co. v. Com'r of Internal Revenue, 15 B. T. A. 556.

"For the years 1918, 1919 and 1920 judgment will be entered for the petitioner. The proceeding in so far as it relates to the year 1921 is dismissed for lack of jurisdiction."

There are six assignments of error as follows: First and second, that the Board erred as a matter of law in deciding that there were no deficiencies for the years 1918, 1919, and 1920, and in not deciding that there were deficiencies for said years and for the year 1921; third, that the Board erred as a matter of law in dismissing for lack of jurisdiction the proceeding in so far as it relates to the year 1921; fourth and fifth, that the Board erred as a matter of law in failing to vacate the decision referred to in assignments 1, 2 and 3; sixth, that the Board committed other plain errors manifest in the record.

It is contended by counsel for respondent that assignments 1 to 5, inclusive, are too general and are directed solely to the decision, that they do not point to any special ruling or to the insufficiency of the evidence to support the decision, and that consequently such assignments present nothing for the consideration of the appellate court, and that the sixth assignment is unworthy of discussion.

It is true that the assignments are general in character, and, if we were to follow the strict rules applicable to appeals from the District Courts, we might decline to consider them, but in view of section 1003 (a) and (b) of the Revenue Act of 1926, 26 USCA § 1226 (a) and (b), it is thought that the assignments are sufficient to warrant us in reviewing the decision of the Board. Those sections are as follows:

"(a) The Circuit Courts of Appeals and the Court of Appeals of the District of Columbia shall have exclusive jurisdiction to review the decisions of the board (except as provided in section 346 of Title 28); and the judgment of any such court shall be final, except that it shall be subject to review by the Supreme Court of the United States upon certiorari, in the manner provided in section 347 of Title 28.

"(b) Upon such review, such courts shall have power to affirm or, if the decision of the board is not in accordance with law, to modify or reverse the decision of the board, with or without remanding the case for a rehearing, as justice may require."

Counsel for petitioner in their brief state that the petitioner raises no question concerning the taxes for the years 1918–1919, because, as stated in the brief: "While the Commissioner appears to have had waivers covering taxes for the years 1918 and 1919, such waivers were not introduced in evidence and therefore, so far as the record is concerned, it appearing that the statute of limitations had run against the assessment of taxes for those years at the time the sixty-day letters were issued, the Commissioner raises no question concerning taxes for those years."

We shall, therefore, confine our discussion to the question of the legality of the taxes imposed for the years 1920 and 1921.

Section 274 (a) of the Revenue Act of 1924, chapter 234, 43 Stat. 253, 297 (26 USCA § 1048 note) provides that: "If, in the case of any taxpayer, the Commissioner of Internal Revenue determines that there is a deficiency in respect of the tax imposed by this chapter, the taxpayer, except as provided in section 1051 of this title, shall be notified of such deficiency by registered mail, but such deficiency shall be assessed only as hereinafter provided. Within sixty days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals established by section 1211."

Section 2 (a) (1) of said act of 1924, 26 USCA § 1262 (a) (1), provides that, when used in that act, "The term 'person' means an individual, a trust or estate, a partnership, or a corporation."

Section 2 (a) (9), 26 USCA § 1262 (a) (9) states that, in that act "the term 'taxpayer' means any person subject to a tax imposed by this title."

Section 283 (b) of the Revenue Act of 1926 (26 USCA § 1064 (b) contains the following provisions: "If before February 26, 1926, any person has appealed to the Board of Tax Appeals under section 1048 of this title [subdivision (a) of section 274 of the Revenue Act of 1924] * * * and the appeal is pending before the board on February 26, 1926, the board shall have jurisdiction of the appeal. In all such cases the powers, duties, rights, and privileges of the commissioner and of the person who has brought the appeal, and the jurisdiction of the board and of the courts, shall be determined, and the computation of the tax shall be made, in the same manner as provided in subdivision (a) of this section. * * * *"

As shown in the above-quoted findings of the Board, the deficiency notice for the year 1920 was addressed to the investment company, respondent herein. The deficiency notice for the year 1921 was sent to the fruit company in care of the investment company. For the year 1920 judgment was entered for the respondent, and proceedings, in so far as they related to the year 1921, were dismissed for lack of jurisdiction.

It is contended that, inasmuch as the record of the proceedings before the Board discloses that after said notices had been sent out directed, as hereinbefore stated, the respondent, San Joaquin Fruit & Investment Company, appeared as petitioner and described itself as the "taxpayer," "formerly the San Joaquin Fruit Company," and "successor to San Joaquin Fruit Company through change of name only," and for some time participated in the hearings before said Board and raised no question as to the sufficiency of the sixty-day letters sent to it until after the time had expired within which determination could be made against the fruit company, and, the case having been tried in part upon the theory that respondent was liable for the taxes in question, it was estopped to change its position and deny its liability.

We believe that this position is well taken. The San Joaquin Fruit & Investment Company was in law and in fact the "taxpayer" in the instant case, and so held itself out in its own pleadings, further setting forth the theory under which it regarded itself as the "taxpayer"; namely, that it was "formerly the San Joaquin Fruit Company" and "successor to San Joaquin Fruit Company through change of name only." These statements accurately described what had actually occurred, and the respondent cannot now be heard to deny them.

In this connection, illumination may be derived from the following statement by Mr. Justice Swayne, in Casey v. Galli, 94 U. S. 673, 680, 24 L. Ed. 168: "Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely. Sound ethics require that the apparent, in its effects and consequences, should be as if it were real, and the law properly so regards it."

In the instant case, the liability of the respondent as "taxpayer" was, not only "apparent," but "real"; for section 280 of the Revenue Act of 1926, 26 USCA § 1069 (a) (1), plainly provides:

"(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds).

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter or by any prior income, excess-profits, or War-Profits Tax Act."

In this case, therefore, the San Joaquin Fruit & Investment Company was stating a "real" as well as an "apparent" situation when it described itself as the "taxpayer"; for, being the transferee of the San Joaquin Fruit Company, it was indeed charged with "the liability, at law or in equity" of the "taxpayer" that it has succeeded.

It may be argued that any mistake of law or fact would not estop the respondent from interposing a meritorious defense to the claim. This objection would be valid, if applicable. But here we have a mistake neither of fact nor of law. The respondent, as far as its liability for the tax was concerned, was in truth the "taxpayer," as it described itself.

The omission of the designation "transferee" on the part of the respondent, as well as on the part of the petitioner, when referring to the San Joaquin Fruit & Investment Company, cannot be called a mutual mistake of law. As far as the Commissioner is concerned, the failure so to label the admitted taxpayer is a procedural and administrative omission. The statutes do not require such a designation of the transferee. It does not seem to us to be indispensable, so far as the government's right to collect taxes lawfully due to it is concerned.

In Nauts v. Clymer (C. C. A.) 36 F.(2d) 207, 208, a deficiency assessment was made against "George H. Marsh, deceased, L. C. Morgan, Executor." Deciding the case on other grounds, the Sixth Circuit Court "assumed" that "notice 'to the taxpayer' * * might reasonably be construed to include no-

tice to an acting executor holding assets of the estate."

Regarding section 280 as merely remedial, and not declaratory of any new tax-collecting right possessed by the government, the Supreme Court of the United States, in the recent case of Annie G. Phillips et al. v. Commissioner of Internal Revenue, 51 S. Ct. 608, 610, 75 L. Ed. 1289, decided May 25, 1931, has shown a disposition to construe this statute liberally in favor of the government's "need promptly to secure its revenues." While in that case, according to the findings of the United States Board of Tax Appeals (15 B. T. A. 1218, 1219), the taxpayer sought to be held was indeed designated as transferee, the court decided the suit on other grounds.

In reaching its decision, however, the Supreme Court used language strongly indicative of its general attitude toward the construction of a statute of this remedial character. Mr. Justice Brandeis, who delivered the opinion, said: "Section 280 (a) (1) [of the Revenue Act of 1926, 26 USCA § 1069] provides the United States with a new remedy for enforcing the existing 'liability, at law or in equity.' The quoted words are employed in the statute to describe the kind of liability to which the new remedy is to be applied and to define the extent of such liability. The obligation to be enforced is the liability for the tax. Russell v. United States, 278 U. S. 181, 186, 49 S. Ct. 121, 73 L. Ed. 255; United States v. Updike, 281 U. S. 489, 493, 494, 50 S. Ct. 367, 74 L. Ed. 984. The proceeding is one to collect the revenue. That Congress deemed the section necessary in order to make the tax-collecting system more effective is established, not only by the fact of enactment, but also by the reports of the committees."

The Supreme Court then paints in the background for this particular statute, in the following footnote: "Conference Report to accompany H. R. 1, H. Rep. No. 356, 69th Cong., 1st Sess., February 22, 1926, p. 44, states that the section 'makes the procedure for the collection of the amount of the liability of transferees conform to the procedure for the collection of taxes * * * for *procedural purposes the transferee is treated as a taxpayer would be treated.'* [Italics our own.] Compare H. Rep. No. 2, 70th Cong., 1st Sess., December 7, 1927, pp. 31–32: 'Section 280 of the 1926 Act has proved a very effective and necessary method of stopping tax evasion through the various favorite methods recognized by every one prior to the 1926 Act. The enforcement of the liability through court process had been ineffective and the amount of revenue lost through mala fide transfers or through corporate distribution of assets was admittedly large.' "

In the instant case the transferee, the taxpayer in fact and in law, received the notice of deficiency in the tax of the transferee's predecessor. The transferee's own pleadings clearly show that such notice conveyed the necessary information; namely, a deficiency in the tax, for which the transferee was sought to be held liable, and was in fact and in law liable. The mere failure so to designate the transferee is not fatal, nor does it deprive the Board of Tax Appeals of its jurisdiction over the proceedings and to determine the issues there involved.

In view of the Supreme Court's liberal attitude toward this statute as a remedial measure, we do not feel inclined to deny the Government its right to collect its taxes merely because it failed to label the transferee as such.

To apply to such a statute the strict rules of construction of common-law pleading would scarcely be appropriate. Particularly is this true when we remember that not even the statute itself requires that the transferee shall be so designated in the notice of deficiency. It is only by strained inference that this requirement can be read into the law.

The decision of the Board of Tax Appeals is affirmed as to the years 1918 and 1919, and reversed as to the years 1920 and 1921.

WILBUR, Circuit Judge, concurs.