## COMMISSIONER OF INTERNAL REVENUE v. RICHFIELD OIL CO.

### No. 6108.

Circuit Court of Appeals, Ninth Circuit.

July 7, 1930.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and John Vaughan Groner, Sp. Assts. to Atty. Gen. (C. M. Charest Gen. Counsel, Frank M. Thompson, Sp. Atty., Bureau of Int. Revenue, both of Washington, D. C.), for petitioner.

Claude I. Parker and Ralph W. Smith, both of Los Angeles, Cal., for respondent.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals. The facts as found by the Board are substantially as follows: The Richfield Oil Company and the Olinda Gasoline Company are California corporations, with their principal offices at Los Angeles. The Olinda Company was a producing company, organized in 1913. The Richfield Company was a distributing company, organized shortly before the Olinda Company. The Olinda Company was promoted and organized by J. F. Vordermark, who was a practical and experienced gasoline man. The stock of the Olinda Company was issued to him and his associates for leases and for cash. For business reasons, the 94 shares to which he became entitled were issued one share to him and 93 shares to Miss R. E. Harper, who later became his wife. The remaining 406 shares became the property of the stockholders of the Richfield Company, with the exception of 5 shares acquired by one Sawyer. The Richfield Company furnished four of the directors of the Olinda Company, and Vordermark, the fifth director became president and general manager from the time of its organization until 1925, at a salary of from $150 to $200 per month. By contract between the two companies, the entire output of the Olinda Company was sold to the Richfield Company at from 2 to 7 cents per gallon below the market price, averaging about 4 cents below during the entire period, the Richfield Company fixing the price and terms of contracts. The business policy of the Olinda Company, its expenditures and management, were at all times un-

der the complete domination and control of the majority interest represented by stockholders in the Richfield Company, who owned 80.2 per cent. of the Olinda Company stock and furnished four of its five directors, as already stated. The 93 shares of Olinda Company stock standing in the name of Mrs. Vordermark were never voted, nor were the 5 shares held by Sawyer. Vordermark voted his 1 share in accordance with the wishes and plans of the majority, as he considered that his position and salary depended on their will. There was no outstanding adverse interest, and every stockholder actively aided in the unanimous control of the business and capital stock of the Olinda Company or was agreeable thereto. Substantially all of the stock of the Richfield Company and the Olinda Company was owned or controlled by the same interests during the years 1918 and 1919; they were affiliated during those years and were entitled to file consolidated returns. The Commissioner of Internal Revenue had determined that the Richfield Company and the Olinda Company were not affiliated during the years 1918 and 1919, but on appeal the Board of Tax Appeals reversed the determination of the Commissioner and held that the two companies were affiliated, within the meaning of the law. The question of affiliation is therefore the only question with which we are concerned.

 Section 240(b) of the Revenue Act of 1918 (40 Stat. 1057) provided that two or more domestic corporations should be deemed to be affiliated if substantially all the stock of two or more corporations was owned or controlled by the same interests. Article 633 of Treasury Regulation 45 provided that corporations should be deemed to be affiliated when one domestic corporation owned directly or controlled through closely affiliated interests, or by a nominee or nominees, substantially all the stock of the other or others, or when substantially all of the stock of two or more domestic corporations was owned or controlled by the same interests; that the words "substantially all the stock" could not be interpreted as meaning any particular percentage, but must be construed according to the facts of the particular case; that the owning or controlling of 95 per cent. or more of the outstanding voting capital stock (not including stock in the treasury) at the beginning of and during the taxable year should be deemed to constitute an affiliation within the meaning of the statute; that consolidated returns might, however, be required, even though the stock ownership was less than 95

per cent.; that when the stock ownership or control was less than 95 per cent., but in excess of 50 per cent., a full disclosure of affiliations should be made, showing all pertinent facts, including the stock owned or controlled in each subsidiary or affiliated corporation and the percentage of such stock outstanding. Section 240(c) of the Revenue Act of 1921 (42 Stat. 227) re-enacted that portion of the section of the prior law now involved, and article 633 of Treasury Regulation 62 raised the minimum percentage of ownership under which affiliation might be held to exist from 50 to 70. Section 240(c) of the Revenue Act of 1924 (43 Stat. 253 [26 USCA § 993]) eliminated any further question as to what would constitute substantially all the stock by providing that the ownership or control must extend to at least 95 per cent. The same provision is found in later Revenue Acts. Revenue Act 1926, § 240(c), 44 Stat. 9 (26 USCA § 993) and Revenue Act 1928, § 142(c), 45 Stat. 791 (26 USCA § 2142). We do not think, however, that the later acts should be construed as a legislative construction of the indefinite language found in the earlier ones, because the purpose of the amendment was to make definite and certain that which had theretofore been left indefinite and uncertain, and perhaps advisedly so.

It is questionable, at least, whether the mere ownership of approximately 80 per cent. of the capital stock of a corporation is substantially all the capital stock, but we think the control of the stockholders of the Richfield Company extended beyond the 80 per cent. owned by them. There is at least an apparent conflict of authority as to the meaning of the term control, as here employed. Some of the courts seem to limit it to cases where the control is enforceable by legal means, while others give the term a broader significance. Great Lakes Hotel Co. v. Commissioner of Internal Revenue (C. C. A.) 30 F.(2d) 1; Commissioner of Internal Revenue v. Adolph Hirsch & Co. (C. C. A.) 30 F.(2d) 645; Ice Service Co. v. Commissioner (C. C. A.) 30 F.(2d) 230. No doubt the term means something more than control through the election of officers, or management through majority rule, and something more than mere acquiescence on the part of the minority stockholders. Nevertheless, it would seem that effective control may exist, even though it is not enforceable by legal means. In the present case, the president and manager of the Olinda Company voted his 1 share of stock with the majority, because he considered that his position depend-

362

ed upon it, and control effective by such means would seem to be adequate and sufficient. The relation of the president and manager to the other 93 shares, which, for business reasons, were issued in the name of the girl or woman who afterwards became his wife, is not very clearly disclosed by the testimony, but apparently the stock was held for him, or in his interest, and a finding that he could control the stock if necessary was warranted by the testimony. Nor do we perceive why any such control should cease upon his marriage. At all events, the minority stockholders at all times cheerfully acquiesced in the control of the majority, the business of the two corporations was at all times conducted by the same persons, for a common purpose, and as a single enterprise. For these reasons, in our opinion, the Board did not err in the conclusion reached, and its decision is accordingly affirmed.