**BURNET, Commissioner of Internal Revenue, v. PACIFIC SOUTHWEST TRUST & SAVINGS BANK.**

**PACIFIC SOUTHWEST TRUST & SAVINGS BANK v. BURNET, Commissioner of Internal Revenue.**

No. 6230.

Circuit Court of Appeals, Ninth Circuit.

Dec. 23, 1930.

Rehearing Denied Jan. 26, 1931.

774

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Andrew D. Sharpe, Sp. Assts. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner and respondent Commissioner.

Hugh W. McCulloch, of Chicago, Ill., for respondent and petitioner Pacific Southwest Trust & Savings Bank.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District. Judge.

WILBUR, Circuit Judge.

The Commissioner of Internal Revenue, in fixing the estate tax upon the estate of Richard Sykes, who died May 31, 1923, included in the gross estate properties which had been conveyed by the decedent by four separate conveyances upon the ground that the property described in these several deeds "took effect in possession or enjoyment at or after the death" of said decedent. The executor of the will of the decedent and the trustees in the several trust deeds and conveyances petitioned the Board of Tax Appeals for review of the finding of the Commissioner of Internal Revenue. The Board of Tax Appeals affirmed the decision of the Commissioner with reference to the property transferred by the decedent in the trust agreement executed by him April 1, 1916, and the trustees and the executor petition this court to review that part of the decision.

The Board of Tax Appeals reversed the decision of the Commissioner with reference to the trust conveyance dated April 7, 1916, and the conveyance dated December 1, 1916, and from this part of the decision the Commissioner petitions this court for a review thereof. A fourth deed is also involved in these proceedings, but the Commissioner admits the correctness of the decision of the Board of Tax Appeals with relation thereto, and abandons his appeal from that portion of the order refusing to impose a tax upon the property transferred by the fourth deed which was dated January 8, 1920. The Board of Tax Appeals found as a fact that none of the deeds were made in contemplation of death. As the conveyances all vary in their terms, each will be considered separately.

On April 1, 1916, the decedent, Richard Sykes, conveyed to the Merchants' Loan & Trust Company and Leon L. Loehr, as trustees, 17,550 shares of the capital stock of the Alliance Mortgage & Investment Company, Limited, of Manchester, England; Anglo-California Trust Company certificate for 95 bonds of the Netherlands Farms Company of the denomination of $1,000 each; and a note of the Miramar Company for $13,000. The decedent reserved the right to alter, change, and amend the trust instrument and the terms of the trust and at any time during his lifetime "to wholly and absolutely cancel and annul the same, and wholly revoke the covenants and provisions herein or hereby or by any further or supplemental instrument made, and may recall, receive and recover to himself all the said trust estate and property, fully released from the trusts hereby created." The conveyance further provided that, upon such revocation and upon payment to the trustees for their services, they were to at once execute and deliver all necessary instruments for conveyance or reconveyance, assignment and transfer of any and all property held by them to Richard Sykes, the party of the first part. The trust agreement also provided that Richard Sykes during his lifetime should have full authority to sell the property theretofore conveyed in trust for any price and upon such terms and to such persons as he considered proper, fully released from the trust, and to invest the proceeds thereof and to convey the same to the trustees to be managed in accordance with the

trust. Subsequent to the execution of this trust agreement, certain supplementary agreements were executed, and it was found that the certificate of stock of the Alliance Mortgage & Investment Company could not be transferred on the books of the company, consequently Mr. Sykes sold the stock, realizing thereon $77,947.27 which he transferred to the trustees to be held under the terms of the trust. It is unnecessary to refer in detail to the disposition of the items of property covered by this trust agreement or to state in further detail the nature of the supplementary agreements. The property conveyed in this trust agreement was clearly a part of the gross estate of the settlor for purposes of taxation under sections 401, 402, of the Revenue Act of 1921 (42 Stat. 227) as interpreted and applied by the Supreme Court of the United States in Reinecke, Collector, v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 124, 73 L. Ed. 410, 66 A. L. R. 397; and Chase Natl. Bank v. U. S., 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388. In the former case, as to two trusts created in 1903 and 1910, respectively, wherein and "by the terms of each trust there was reserved to the settlor alone a power of revocation of the trusts, upon the exercise of which the trustee was required to return the corpus of the trust to him," it was held that the corpus of the trust was taxable as a part of his estate at the time of his death which occurred May 30, 1922. With regard to these two trusts, the court, speaking through Mr. Justice Stone, stated as follows:

"As to the two trusts, it is argued that since they were created long before the passage of any statute imposing an estate tax the taxing statute if applied to them is unconstitutional and void, because retroactive, within the ruling of Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081. In that case it was held that the provisions of the similar section 402 of the 1918 Act, 40 Stat. 1097, making it applicable to trusts created before the passage of the act was in conflict with the Fifth Amendment of the Federal Constitution and void as respects transfers completed before any such statute was enacted. But in Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405 [63 A. L. R. 388], decided this day, the decision is rested on the ground, earlier suggested with respect to the Fourteenth Amendment in Saltonstall v. Saltonstall, 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. Ed. 565, that a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death. Hence section 402, as applied to the present transfers, is not retroactive since his death follows the passage of the statute. For that reason, stated more at length in our opinion in Chase National Bank v. United States, supra, we hold that the tax was rightly imposed on the transfers of the corpus of the two trusts and as to them the judgment of the court of appeals should be reversed."

Upon the authority of this decision and the cases therein cited, that portion of the order sustaining the Commissioner's decision to include the property included in the trust agreement of April 1, 1916, as part of the gross estate of the decedent for purposes of fixing a tax, must be affirmed.

On April 7, 1916, the decedent, Richard Sykes, conveyed to the corporation therein named as trustee certain real estate situate in the county of Santa Barbara, state of California. This agreement provided, among other things, that the trustees were to manage the property, pay expenses, tax assessments, etc., from the income, rents, issues, profits, proceeds of all sales and contracts of sale. They were to sell such portions of the land "as shall or may be requested and designated by the said trustor," and were to pay the net proceeds thereof as received, and also the net income derived from the trust "to the said trustor for and during his life or until the expiration of fifteen years from the date hereof, whichever event shall happen first." This would seem to bring the trust property within the principle of the decision of the Supreme Court in Reinecke v. Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, supra; Chase Natl. Bank v. U. S., 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388, supra; Tyler v. U. S., 281 U. S. 497, 50 S. Ct. 356, 358, 74 L. Ed. 991, 69 A. L. R. 758. The latter case, Tyler v. U. S., enunciates the rule upon which the court sustains the power of the federal government to tax transfers in trust where the trustor reserves such interest in the trust property, or retains such rights therein or control thereof as defers possession and enjoyment in ultimate beneficiaries until his power to control the trust is terminated by his death.

"Death duties rest upon the principle that death is the 'generating source' from which the authority to impose such taxes takes its being and 'it is the power to trans-

mit or the transmission or receipt of property by death which is the subject levied upon by all death duties.' Knowlton v. Moore, 178 U. S. 41, 56, 57, 20 S. Ct. 747, 754, 44 L. Ed. 969. But mere names and definitions, however important as aids to understanding, do not conclude the lawmaker, who is free to ignore them and adopt his own. Karnuth v. United States, 279 U. S. 231, 242, 49 S. Ct. 274, 73 L. Ed. 677. A tax laid upon the happening of an event, as distinguished from its tangible fruits, is an indirect tax which Congress, in respect of some events not necessary now to be described more definitely, undoubtedly may impose. If the event is death and the result which is made the occasion of the tax is the bringing into being or the enlargement of property rights, and Congress chooses to treat the tax imposed upon that result as a death duty, even though, strictly, in the absence of an expression of the legislative will, it might not thus be denominated, there is nothing in the Constitution which stands in the way.

"The question here, then, is not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened, for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

In Tyler v. United States, supra, the court was dealing with the power of the federal government to impose this tax upon property which had been conveyed by the husband or through the intervention of a third party, to the husband and wife as tenants by the entirety. Although the entire property passed to the husband and wife under these conveyances, and was held by them as tenants by the entirety until the death of the husband, it was held that upon his death the rights of the wife were so far modified by the fact of his death as to subject the property to the tax as passing in possession or enjoyment at his death in the event that Congress saw fit to impose such tax by a law enacted after the deed and before the death of the grantor, and that such a tax was not a direct tax in violation of the Federal Constitution (article 1, § 2, clause 3, and section 9, clause 4), and that such tax did not amount to a deprivation of property without due process of law, in violation of the Fifth Amendment to the Constitution.

■ The deed of December 1, 1917, contained no reservation of power to revoke the trust, or to require the payment of the income or corpus of the estate to the settlor. It was an absolute conveyance of the entire estate in trust, the estate so conveyed, together with the accumulations thereof, to go to the sons of the settlor, or the survivor, if either survived, for twelve years. The trust in that regard provided as follows:

"Seventh * * * At the expiration of twelve years from date hereof this trust shall terminate; at the date of such termination all of the net income and net proceeds of sales and contracts of sales, and all of the trust property then remaining in the hands of the trustee shall go to and be paid equally share and share alike, to Richard Sykes, who was on September 7, 1917, of the age of twelve years, and Edward Christopher Sykes, who was on August 22, 1917, of the age of ten years (both being sons of said trustor), or to their legally appointed guardian while they are minors, for and during their lives or until the final termination of this trust, whichever event shall happen first. In the event that any one of the said above named sons of said trustor, who are hereafter called beneficiaries, shall die prior to the natural termination of this trust, the whole of the beneficial interest payable under the terms hereof shall go and be paid to the survivor of them to and until the natural termination of this trust, or until the death of such survivor, whichever event shall happen first.

"In the event of the demise of both of said above named sons of the trustor prior to the expiration of twelve (12) years from the date hereof, the said trustor having previously died, this trust shall ipso facto cease and determine at the time of the demise of the last living of them, and the entire trust estate, in whatever form, properties or investments it may at that time be, together with all undistributed trust funds in the hands of said trustee, shall be subject to the testamentary disposition of said trustor, or in the event that he shall die intestate it shall go, vest in, and be transferred to the then living heirs at law of said trustor, according to the laws of succession of the State of North Dakota then in force."

The declaration of trust of December 1, 1917, was never changed, altered, or amended in any manner whatever. Both of said children survived the trustor to the end of the 12-year period (December 1, 1929). The Commissioner contends that the rights of the sons of the trustor were so far dependent up-

on the death of the trustor that their possession and enjoyment thereof took effect at or after his death, and hence the estate was subject to the estate tax. It is clear, however, that the death of the trustor in no way affected the disposition of the property to them. Their interest was fixed by the trust conveyance; it is true that the interest of either was to be divested by his death if it occurred before December 1, 1929, and that, in the event both died before that date, the estate would vest in either the devisees or the heirs of the trustor, as the case might be. As to this contingent remainder, it is clear that the right thereto was fixed when, and only when, the settlor died. This contingent interest would be one that would take effect in possession or enjoyment at or after the death of the trustor. It has been demonstrated by the passage of time that this contingency is valueless, as both sons survived the termination of the trust, and are now entitled to the whole estate. The Commissioner did not undertake to levy a tax upon this contingent interest, and makes no claim of his right to do so now. If the value of this contingent interest is properly to be considered as a part of the gross estate of the trustor, no claim of the Commissioner is based thereon. His claim is that the whole trust estate conveyed in the deed is to be added to the gross estate for the purpose of fixing the tax thereon. This contention is largely based upon the untenable point made by him that the entire interest of the sons comes within the purview of the law taxing estates that vest in possession or enjoyment after death. To the other cases herein cited on this point we add May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 62 A. L. R. 1244. He also calls attention to the contingent remainder as constituting a basis for including the entire trust estate in the gross estate of the trustor but makes no separate contention thereon. The point seems to be that, if any part of the estate conveyed in trust by the decedent is to take effect in possession or enjoyment at or after the death of the decedent, the whole estate conveyed must be added to the gross estate of the decedent for the purpose of fixing the estate tax. No case is cited in support of this contention, although we are told in the argument that this has been the uniform practice of the Commissioner in fixing estate taxes. The contention seems to be directly in the teeth of the plain language of the law imposing the tax. Section 402 of the Revenue Act of 1921 provides:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * (c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death. * * * "

 It seems clear that the phrase "intended to take effect in possession or enjoyment at or after his death" would determine the "extent" of the "interest" to be added to the gross estate and subject to the tax. If, on the contrary, the "extent of the interest" taxable is doubtful, that doubt is to be resolved in favor of the taxpayer (Reinecke v. Northern Trust Co., 278 U. S. 340, 348, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, supra). Thus construed, omitting matter irrelevant to the issue here, section 402 would read, in effect, as follows:

"That the value of the gross estate * * * shall be determined by including the value * * c. to the extent of any interest therein * * * in respect to which he has * * * created a trust * * * intended to take effect in possession or enjoyment at or after his death. * * * "

This interpretation would conform to the statement of the Supreme Court as to the purpose of the law in Reinecke v. Northern Trust Co., supra, quoted in May v. Heiner, supra, and hereinabove quoted, that: "In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred." The fact that this interest is conveyed by an instrument which conveys other interests in the estate must be as irrelevant to the question of taxation as if there were two separate rate conveyances executed at different times, so that it cannot be the value of the interest transferred by the trust deed that is taxable, but only such portion, or interest, so conveyed as is intended by the trustor making the conveyance to take effect or enjoyment at and after his death, or such as actually does so take effect within the meaning of section 402. Referring to the above quotation from Tyler v. United States, supra, we emphasize the suggestion therein that the extent of the tax or "death duty" is "to be measured in whole or in part by the value of such rights"; that is, as we interpret it, the value of rights brought into being or rip-

ened for the survivor by the death of the decedent. It is the value of these rights, as we understand it, that measures the extent of the death duty. This interest, taking effect on decedent's death, in the case at bar is now so evidently valueless by reason of the failure of the contingency upon which it is based that we need not further consider the taxability thereof, particularly in view of the absence of any distinct claim thereto. Upon the petition of the taxpayer to review that portion of the order of the Board of Tax Appeals affirming the Commissioner's order including the property conveyed in the deed of April 1, 1916, as a part of decedent's gross estate, that portion of the order is affirmed. Upon the petition of the Commissioner to review the order of the Board of Tax Appeals as to the deeds of April 7, 1916, and December 1, 1917, the order is reversed as to the property included in the deed of April 7, 1916, and the Commissioner is directed to include this property in the gross estate of the decedent; as to the property conveyed by the deed of December 1, 1917, the decision of the Board of Tax Appeals is affirmed, and the Commissioner directed not to include it in the gross estate; as to the deed of July 12, 1920, the Commissioner, having withdrawn his contention in opposition to the order of the Board of Tax Appeals, is directed not to include the same in the gross estate. To recapitulate: The Commissioner will add to the gross estate as fixed by the Board of Tax Appeals the value of the property covered by the deed of April 7, 1916, and is directed to compute the tax upon that basis.