**BURNET, Commissioner of Internal Revenue, v. BANK OF ITALY.\***

No. 6128.

Circuit Court of Appeals, Ninth Circuit.

Jan. 26, 1931.

G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch and Andrew D. Sharpe, Sp. Assts. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and Frank M. Thompson, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Claude I. Parker and Ralph W. Smith, both of Los Angeles, Cal., for respondent.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

RUDKIN, Circuit Judge.

This is a proceeding to review a decision of the United States Board of Tax Appeals

*Certiorari denied 51 S. Ct. —, 75 L. Ed. —.

holding that the respondent and the First National Bank of Fresno, Cal., were affiliated during the calendar year 1920 and a portion of the calendar year 1921, within the meaning of section 240(b) of the Revenue Act of 1918 (40 Stat 1082), re-enacted as section 240(c) of the Revenue Act of 1921 (42 Stat. 260). The correctness of this ruling is the only question presented for consideration.

The Revenue Acts in question provide:

"For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

The Board of Tax Appeals found that the respondent is a banking corporation organized under the laws of the state of California, with its principal place of business in San Francisco; that during the taxing period in question the respondent owned, controlled, or was affiliated with a number of other banks or affiliated branches in a number of cities and towns in California; that the Stockholders' Auxiliary Corporation is a subsidiary of the respondent, and is a holding corporation for the purpose of holding stock in the various banks which the respondent owns, controls, or is affiliated with; that the Fresno bank was a national banking corporation, with its principal place of business in Fresno and a capital stock of $500,000, divided into 5,000 shares, all of which were issued and outstanding on and after January 1, 1920; that the Fresno bank was a competitor of the respondent and its affiliated connections in Fresno and contiguous territory; that, in order to eliminate competition and add the business of the Fresno bank to its own the respondent determined to purchase the stock of the Fresno bank; that this determination was carried out through the instrumentality of the Auxiliary Corporation; that at the beginning of the year 1920 the Auxiliary Corporation had acquired and then owned 82.45 per cent. of the capital stock of the Fresno bank, and not more than 84.95 per cent. was acquired or owned at any time before its liquidation in June, 1921; that, after liquidation, a branch of the respondent was installed in the premises formerly occupied by the Fresno bank; that during the year 1920, and until liquidation took place, the business policy of the Fresno bank was dictated by the Auxiliary Corporation or by the respondent; that the interest rate charged on loans by the Fresno bank was reduced to conform to the interest rate charged in the state of California by the respondent and its branches; that the personnel of the Fresno bank was supplemented by the respondent; that real estate was purchased by the respondent for the Fresno bank, and its general banking policy was under the supervision of the respondent; that there was at all times harmony between the minority and majority stockholders, and the former did not in any way oppose or contest the management and operation of the Fresno bank; that, prior to June 25, 1920, real estate in Fresno was purchased and title thereto taken in the name of the president of the Fresno bank, and on the latter date the property so acquired was conveyed to the Fresno bank by direction of the respondent; and that the Fresno bank conducted its foreign exchange through the respondent.

Did the respondent bank own or control substantially all the stock of the Fresno bank during the taxing period in question. It has been held that the term substantially all does not mean a fixed percentage; that the term is an elastic one, and must be construed according to the facts in the given case. United States v. Whyel (D. C.) 19 F. (2d) 260, 261. It has likewise been held that substantially all means all except a negligible minority interest. Ice Service Co. v. Commissioner (C. C. A.) 30 F.(2d) 230. See, also, United States v. Cleveland, P. & E. R. Co. (C. C. A.) 42 F.(2d) 413. In the instant case, during the crucial period the stock ownership of the respondent in the Fresno bank was less than 85 per cent. of the whole, and it would not seem that such a percentage is substantially all within the meaning of the statute. In other words, it would seem that 15 per cent., or more, of the capital stock of a $500,000 corporation is a substantial interest, and not a mere negligible one. Furthermore, if the term substantially all is an elastic one, as we believe it is, authority to apply, construe, and administer the statute must be vested in some one, and Congress has seen fit to vest that authority primarily in the Commissioner of Internal Revenue. And if, in the administration of the law, the Commissioner acts within, and does not abuse, the discretion vested in him, his decision is not subject to review by either the Board of Tax Appeals or the courts. In view of these considerations, we are constrained to hold that the respondent did not own substantially all the stock of the Fresno bank during the

period beginning January 1, 1920, and ending with the liquidation of the latter in June, 1921.

▮ Nor did the respondent control the 15 per cent., or better, held by outside interests. In construing the term "control," in Commissioner of Internal Revenue v. Richfield Oil Co., 42 F.(2d) 360, 361, we said: "No doubt the term means something more than control through the election of officers, or management through majority rule, and something more than mere acquiescence on the part of the minority stockholder." The views there expressed are fully supported by the authorities. Ice Service Co. v. Commissioner, supra; Goldstein Bros. v. White (D. C.) 33 F. (2d) 787; American Auto Trimming Co., Michigan, v. Lucas (App. D. C.) 37 F.(2d) 801; United States v. Cleveland, P. & E. R. Co., supra. True, we further held in the Richfield Case that the term "control" was not necessarily confined to control by legally enforceable means, but in this case, so far as the record discloses, there was no control of any kind. The respondent had no interest in or claim to the minority stock, by contract or otherwise, and had no control of any sort over the minority stockholders, so that at best there was mere acquiescence on their part. This does not satisfy the requirements of the statute.

The case is, perhaps, on the border line, and not free from doubt, but, for the reasons stated, we feel constrained to hold that the ownership and control was not sufficient to support the claim of affiliation.

The decision of the Board of Tax Appeals is therefore reversed.