COMMISSIONER OF INTERNAL REVENUE v. LIBERTY BANK & TRUST CO.

LIBERTY BANK & TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 5780, 5867.

Circuit Court of Appeals, Sixth Circuit.
May 12, 1932.

G. A. Youngquist, Ass't Atty. Gen. (Sewall Key, Hayner N. Larson, C. M. Charest, and Prew Savoy, all of Washington, D. C.), for Commissioner.

George M. Morris, of Washington, D. C. (KixMiller, Baar & Morris, of Washington, D. C., on the brief), for Liberty Bank.

W. A. Sutherland, of Atlanta, Ga., amicus curiæ.

Before MOORMAN, HICKS and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

Petitions to review decisions of the Board of Tax Appeals by the taxpayer, the Liberty Bank & Trust Company, in No. 5867, and by the Commissioner in No. 5780.

The petitioner in No. 5867 contends that debts owing to it by the Kentucky Wagon Manufacturing Company and the Wolke Lead Batteries Company were recoverable only in part on December 31, 1921, and that deductions should have been allowed therefor from gross income for the year 1921 in the sum of $175,000. The Commissioner disallowed the deductions, and the Board of Tax Appeals sustained his ruling upon the ground that no part of the indebtedness was charged off by the taxpayer during the taxable year. The ruling of the Board was based on section 234(a) (5) of the Revenue Act of 1921 (42 Stat. 254), which provides that the taxpayer shall be allowed as deductions "debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part." [1]

This statute deals with two classes of debts: Those that have become wholly worthless, and those recoverable only in part. It makes provision for the deduction of each from gross income, providing as to the first that, when "ascertained to be worthless and

HICKENLOOPER, Circuit Judge, dissenting.

[1] The provision as to deductions for "debts ascertained to be worthless and charged off" is the same provision found in the Revenue Act of 1918, § 234 (a) (5), 40 Stat. 1078, since which such deductions have been allowed. That act, however, did not provide for addition to reserve for bad debts nor for a charge off of the unrecoverable part of a debt. These were first provided for in the Revenue Act of 1921.

charged off," a deduction therefor "shall be allowed"; and as to the second, that, when "satisfied that a debt is recoverable only in part the Commissioner may allow such debt to be charged off in part." The allowance as to each class depends on the performance of a precedent act or acts. Those in the first are the ascertainment of worthlessness and the charging off, which must be done by the taxpayer, subject, of course, to the review of the Commissioner as to the reasonableness of the ascertainment. Sherman & Bryan v. Blair, Comm. (C. C. A.) 35 F.(2d) 713; Deeds v. Commissioner, 47 F.(2d) 695 (6 C. C. A.). In the other class the precedent act must be performed by the Commissioner. He must be "satisfied that a debt is recoverable only in part," and, until he is, there can be no charge off, and then only with his permission. The taxpayer being under no duty to make the charge off in this class until the Commissioner permits it to be done, it is sufficient to give him a right to have the Commissioner's ruling reviewed that his claim to a charge off was made and rejected. In this case claims were presented and disallowed. Whether the disallowances by the Commissioner were because of the failure of the taxpayer to charge off the debts in part or were made in the exercise of the discretion which the Commissioner has does not appear. See Stranahan v. Commissioner, 42 F.(2d) 729 (6 C. C. A.) as to the extent of discretion. The Board of Tax Appeals, as we have said, based its decision upon the failure of the taxpayer to charge off the debts in part. We think it should have considered and determined whether the Commissioner abused his discretion in not allowing the charge offs to be made.

The initial question in case No. 5780 is whether this court has jurisdiction and power to hear and determine the questions presented by the petition of the Commissioner. It is said that there is no such power because there is no "case or controversy" within the meaning of section 2 of article 3 of the Constitution. The theory of that view is that the Board of Tax Appeals is an executive or administrative tribunal of the government superior in authority to the Commissioner of Internal Revenue, and that when the Board acted favorably to the taxpayer on its appeal from the deficiency assessment there was an accord between the taxpayer and the highest administrative body, and no controversy remained. It is to be noted in connection with this contention that there are thirty-five reported cases, among them Commissioner v. Bingham, 35 F.(2d) 503 (6 C. C. A.), and

Commissioner v. Leasing & Building Co., 46 F.(2d) 2 (6 C. C. A.), in which petitions in behalf of the Commissioner to review decisions of the Board of Tax Appeals have been accepted without question.[2] Among these cases are decisions from each of the Circuit Courts of Appeals, some of which were reviewed by the Supreme Court, and in none of them was the power of the Circuit Court of Appeals to review a decision of the Board of Tax Appeals upon petition of the Commissioner ever questioned or thought to be in doubt.

Whatever may have been assumed heretofore, it is, however, true that, unless a decision against the government by the Board of Tax Appeals presents a "case or controversy" within the judiciary article, there is no power of review in a constitutional court. We inquire therefore, into the statutory functions of the Board, which, as pointed out in Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 502, 73 L. Ed. 918, was established by the Revenue Act of 1924 (43 Stat. 253). Under that Act it became the duty of the Board to hear and decide whether deficiencies reported by the Commissioner were rightly determined. It was provided in the act that, if the Board determined there was a deficiency, the amount so determined should be assessed and paid upon notice and demand from the collector,

[2] First Circuit: Commissioner v. Angier Corporation, 50 F.(2d) 887; Commissioner v. Old Colony R. Co., 50 F.(2d) 896.

Second Circuit: Blair v. Dustin's Estate, 30 F.(2d) 774; Commissioner v. Adolph Hirsch & Co., 30 F.(2d) 645; Commissioner v. City Button Works, 49 F.(2d) 705; Commissioner v. Field, 42 F.(2d) 820; Commissioner v. Godfrey, 50 F.(2d) 79; Commissioner v. Gong Bell Mfg. Co., 48 F.(2d) 205; Commissioner v. New York Trust Co., 54 F.(2d) 463; Remington Rand, Inc., v. Commissioner, 33 F.(2d) 77.

Fourth Circuit: Burnet v. Hanlon, 51 F.(2d) 463.

Fifth Circuit: Blair v. Stewart, 49 F.(2d) 257; Lucas v. Baucum, 50 F.(2d) 806; Lucas v. Hunt, 45 F.(2d) 781; Lucas v. Colmer-Green Lumber Co., 49 F.(2d) 234.

Seventh Circuit: Commissioner v. Langwell Real Estate Corp., 47 F.(2d) 841; Commissioner v. McCormick, 43 F.(2d) 277, reversed on the merits by the Supreme Court, 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413; Commissioner v. Wright, 47 F.(2d) 871.

Eighth Circuit: Blair v. Byers, 35 F.(2d) 326; Burnet v. Jones, 50 F.(2d) 14; Burnet v. McDonough, 46 F.(2d) 944; Commissioner, Burnet v. Morsman, 44 F.(2d) 902 (reversed on the merits, 283 U. S. 783, 51 S. Ct. 343, 75 L. Ed. 1412); Lucas v. St. Louis National Baseball Club, 42 F.(2d) 984.

Ninth Circuit: Blair v. Roth, 22 F.(2d) 932; Burnet v. Bank of Italy, 46 F.(2d) 629; Burnet v. First Nat. Bank of Fresno, 46 F.(2d) 631; Burnet v. North American Oil Consolidated, 50 F.(2d) 752; Burnet v. Pacific S. W. Trust & Savings Bank, 45 F.(2d) 773; Burnet v. San Joaquin Fruit & Investment Co., 52 F.(2d) 123; Commissioner v. Garber, 50 F.(2d) 588; Commissioner v. Hind, 52 F.(2d) 1075.

Tenth Circuit: Commissioner v. Moore, 48 F.(2d) 526.

and no part of the deficiency assessed by the Commissioner but disallowed as such by the Board could be assessed. The Commissioner, however, was given the power notwithstanding the decision of the Board, to bring a suit in a proper court against the taxpayer to collect as a deficiency the difference between his assessment and that allowed by the Board. See United States v. Cleveland Co., 42 F. (2d) 413 (6 C. C. A.). The Revenue Act of 1926 (44 Stat. 9) enlarged the original jurisdiction of the Board to consider deficiencies beyond those shown in the Commissioner's notice if the Commissioner made claim therefor at or before the hearing. It further provided for a direct judicial review of the Board's decision by the filing by either the Commissioner or the taxpayer of a petition for review. Thus there is full statutory authority for the review here under consideration, and the sole question is whether it was within the power of Congress to confer such authority upon the courts.

 The question would seem to depend first upon who is the United States' "authorized official" or "its representative" for the purpose of asserting its right to the payment of the tax. If the Board is such representative, there is, of course, no controversy between the government and taxpayer after the Board has made a determination in favor of the taxpayer. But the sole function of the Board "consists in reviewing, on appeal, determinations of the Commissioner under the revenue laws." It is not concerned with the collection of taxes and "is not a part of the Bureau of Internal Revenue," but is "an independent agency * * * 'in the executive branch of the government.'" Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 564, 48 S. Ct. 587, 591, 72 L. Ed. 985. While it is not a court but is an executive or administrative board, it nevertheless exercises "appellate powers which are judicial in character." Goldsmith v. United States Board of Tax Appeals, 270 U. S. 117, 46 S. Ct. 215, 70 L. Ed. 494; Blair v. Oesterlein Mach. Co., 275 U. S. 220, 227, 48 S. Ct. 87, 89, 72 L. Ed. 249. The Commissioner, on the other hand, has "general superintendence of the assessment and collection of all duties and taxes imposed by any law providing internal revenue." 26 USCA, § 2. He is designated by Congress to represent the government before the Board and is a party to the proceeding before it. Thus, when a taxpayer seeks a review before the Board of a deficiency assessment, the controversy is between the taxpayer and the government as represented by the Commissioner, and the Commissioner by statutory designation thereafter continues as the government's representative to prosecute its claims from adverse decisions of the Board. 26 USCA § 1224(a).

 It makes no difference that the Board is an executive or administrative tribunal. There are certain matters involving public rights which "admit of legislative or executive determination, and yet from their nature are susceptible of determination by courts." Den ex dem. Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 284, 15 L. Ed. 372; Fong Yue Ting v. United States, 149 U. S. 698, 714, 13 S. Ct. 1016, 37 L. Ed. 905; Ex Parte Bakelite Corporation, 279 U. S. 438, 451, 49 S. Ct. 411, 73 L. Ed. 789. The mode of determining matters of this class is completely within congressional control. Congress may reserve the power to itself, may delegate it to executive officials, or may commit it to judicial tribunals. Ex Parte Bakelite Corporation, supra. The latter course can only be adopted as to constitutional courts in matters which take such form that the judicial power is capable of acting upon them. That power is capable of acting when there are parties whose adverse contentions are submitted to the court in the form prescribed by law, and where the determination involves neither advisory nor executive action. In re Pacific Ry. Commission (C. C.) 32 F. 241, 255; Osborn v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204. In passing upon matters such as are involved in this case, the Board exercises functions similar to those exercised by a trial court in a law case without a jury. Phillips v. Commissioner, 283 U. S. 589, 599, 51 S. Ct. 608, 75 L. Ed. 1289. In our opinion, they are matters susceptible of judicial determination. The order for reargument in the Old Colony Trust Co. Case, supra, recited, among other things, that the court especially desired the assistance of counsel in respect to the question: "Was there power in Congress to confer jurisdiction upon the Circuit Court of Appeals to review action by the Board of Tax Appeals?" The question was not limited to reviews at the instance of the taxpayer, and in holding that such power existed in the case then under consideration the court said: "In the case we have here, there are adverse parties. The United States or its authorized official asserts its right to the payment by a taxpayer of a tax due from him to the gov-

ernment, and the taxpayer is resisting that payment or is seeking to recover what he has already paid as taxes when by law they were not properly due. That makes a case or controversy, and the proper disposition of it is the exercise of judicial power." It is true that in that case the Board of Tax Appeals had not decided for the taxpayer, but, as already pointed out, that Board is an "independent agency" whose sole function "consists in reviewing, on appeal, determinations of the Commissioner under the revenue laws." It is not charged with the duty of assessing or collecting taxes but with deciding controversies between the taxpayer and the authorized representative of the government, the Commissioner of Internal Revenue. The position of the Board is analogous to that of the Board of Appraisers under the Act of June 10, 1890 (26 Stat. 131). That act gave the collector of customs and the Secretary of the Treasury the right to have the decision of the Board of Appraisers as to certain matters reviewed in the Circuit Court. It was never suggested in any of the cases arising under that act that, when the Board of Appraisers decided such matters in favor of the importer, there remained no cognizable controversy for the courts. United States v. Klingenberg, 153 U. S. 93, 14 S. Ct. 790, 38 L. Ed. 647; United States v. Passavant, 169 U. S. 16, 18 S. Ct. 219, 42 L. Ed. 644; United States v. Lies, 170 U. S. 628, 636, 18 S. Ct. 780, 42 L. Ed. 1170.

The questions involved in Federal Radio Commission v. General Electric Co., 281 U. S. 464, 50 S. Ct. 389, 390, 74 L. Ed. 969, were "purely administrative," and, while the court held that it could not review such questions, it nevertheless pointed out that the proceedings there under consideration were wholly unlike proceedings under the Revenue Act of 1926 "on a petition for the review of a decision of the Board of Tax Appeals," saying: "For, as this court heretofore has pointed out, such a petition (a) brings before the reviewing court the United States or its representative on the one hand and the interested taxpayer on the other, (b) presents for consideration either the right of the United States to the payment of a tax claimed to be due from the taxpayer or his right to have refunded to him money which he has paid to satisfy a tax claimed to have been erroneously charged against him, and (c) calls for a judicial and binding determination of the matter so presented—all of which makes the proceeding a case or controversy within the scope of the judicial power as defined in the judiciary article"—citing the Old Colony Trust Company Case, supra. Nowhere in that case nor in the Old Colony Company Case does it appear that the controversy is any the less a controversy within the judiciary article though the petition to review the decision of the Board of Tax Appeals be filed by the United States through its official representative rather than by the taxpayer. There being a controversy in this case between the taxpayer and the government as to the right of the government through its authorized representative to assess and collect the tax, and the Board of Tax Appeals being an independent agency set up to review the action of the Commissioner in making the assessment, we can see no reason why a decision by the Board adverse to the Commissioner's contention does not present a case or controversy between the taxpayer and the government within the scope of the judiciary article. We accordingly hold that the right exists in this court to review the decision of the Board upon the petition of the Commissioner.

In its returns for 1916 to 1919, inclusive, the taxpayer charged off and reported certain debts as worthless. Due allowances were made for these debts by the Commissioner in the assessment of taxes for those years. Upon the payment of the debts in whole or in part in 1920 and 1921, the Commissioner treated the amounts received as a part of gross income. The Board of Tax Appeals reversed this ruling, holding to which there were dissents, that these payments were not a part of gross income for the years received because they were not in fact ascertained to be worthless for the years for which they were so reported and charged off. The opinion proceeded on the theory that the mistakes made in claiming and allowing the deductions for prior years could not be corrected by crediting the amounts collected to income in the year of collection. The Commissioner contends that the taxpayer, having asserted in its returns for the former years that the debts were ascertained to be worthless and charged off, and having received the benefit of such assertion, is now estopped to deny its truth to the prejudice of the government. The taxpayer contends, first, that the facts of the case do not call for the application of equitable estoppel; and, second, that even if they did, the debts when collected were not income, but were return of capital.

█ It is said that it was the duty of the Commissioner, before allowing the deductions in the former years, to exercise reasonable diligence to discover whether the debts were worthless, and if he had done so, he could have ascertained that they were not. While it may be conceded that the Commissioner may not blindly accept every statement which a taxpayer makes as to a fact, and by acting thereon preclude the taxpayer from showing at some other time that the statement was mistakenly made, we cannot assent to the view that a taxpayer which has been allowed a deduction for a debt, on its statement under oath that the debt has been ascertained to be worthless, is not estopped thereafter from denying the truth of the statement to the prejudice of the government. The Commissioner of necessity does and must rely largely upon the representations of the taxpayer, and, in order to estop the taxpayer from assuming a contrary position, he is not compelled to look with suspicion upon all such representations and himself examine, or cause to be examined, the financial condition of all the taxpayer's debtors. It is the duty of the taxpayer to deal fairly and truthfully with the government. The taxpayer in this case was in a better position to ascertain the facts as to the value of debts owing to it than was the government, and it cannot now say that the government, by the exercise of reasonable care, ought to have done what it failed to do. The officers of the government charged with the duty of assessing and collecting taxes have the right to assume that a taxpayer will do his duty, and we think it is to be presumed from the fact that these deductions were allowed for the years in which they were claimed that the Commissioner relied upon the taxpayer's sworn statements that the debts were worthless. It is also to be presumed, in the absence of evidence to the contrary that the government was prejudiced by such reliance, for it is obvious that a deduction from gross income reduces the net income subject to taxation. The purpose which the statute has in view in authorizing deductions for bad debts is to permit the taxpayer to reduce his taxable income. It is fair to infer from the fact that deductions were claimed and allowed for these debts in former years, nothing else appearing, that there was a consequent reduction in taxable income.

█ Even if the taxpayer is not estopped from asserting that there was no ascertainment of worthlessness for the former years, we are of opinion that the amounts received in payment of the debts were chargeable to gross income for the years in which they were received. On this point the case is controlled, it seems to us, by the principles announced in Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383, where a taxpayer sustained losses on a contract which were deducted from income for the year in which they were sustained. These losses were subsequently recovered, and the court held that the recovery was a part of gross income when received, notwithstanding it "equalled, and in a loose sense was a return of, expenditures made in performing the contract." This accords with the Department's interpretation of the statutes. The regulations promulgated under section 213 (a) and section 233 (a) of the Revenue Act of 1921 (42 Stat. 238, 254) provide that bad debts, charged off because determined to be worthless, which are subsequently recovered, constitute income for the year in which recovered. Like regulations were promulgated under corresponding provisions of the Revenue Acts of 1916 and 1918 (39 Stat. 756; 40 Stat. 1057), and with these earlier regulations in effect Congress enacted sections 213 (a) and 233 (a) of the Revenue Act of 1921 in substantially the same language as the earlier acts. The same language was incorporated into the succeeding Revenue Acts of 1924, 1926, and 1928. It must be taken as settled that Congress was cognizant of the interpretation which the Treasury Department had put on the Revenue Acts of 1916 and 1918, and yet, with that interpretation extant, the provisions to which it applied were re-enacted in 1921. If such interpretation had not been consonant with the intent of Congress, it is reasonable to suppose that it would have modified this construction in the act of 1921, or in the later acts. Copper Queen Consol. Mining Co. v. Territorial Board of Equalization of Arizona, 206 U. S. 474, 27 S. Ct. 695, 51 L. Ed. 1143; Heiner v. Colonial Trust Co., 275 U. S. 232, 48 S. Ct. 65, 72 L. Ed. 256. In view of Burnet v. Sanford & Brooks Co., supra, we hold that it is permissible under the Sixteenth Amendment to credit to gross income the recoveries on debts for which deductions were allowed in former years.

The orders in both cases are reversed and the causes remanded for further proceedings consistent with this opinion.

HICKENLOOPER, Circuit Judge (dissenting).

In so far as the foregoing opinion recognizes and affirms the power in Circuit Courts

**326**

of Appeals to entertain jurisdiction of a petition to review a decision of the Board of Tax Appeals when filed by the Commissioner of Internal Revenue, I am constrained to dissent. In such a proceeding I fail to find the "case or controversy" necessary as a foundation of judicial action by a constitutional court. It is true that counsel for the taxpayer refused to argue this constitutional question, although requested so to do by the court, and openly conceded jurisdiction, and it is thus unlikely that any attempt will be made to bring the question to the attention of the Supreme Court for decision, and that this dissent is therefore but a vain act; but I nevertheless feel obligated to express the views which I have long entertained, but for the expression of which necessity has not heretofore arisen.[3] Perhaps in some other case counsel may deem the question worthy of being brought to the notice of the Supreme Court, where I feel it should receive controlling and final consideration.

"The Circuit Court of Appeals is a constitutional court under the definition of such courts as given in the Bakelite Case, supra [279 U. S. 438, 49 S. Ct. 411, 73 L. Ed. 789], and a case or controversy may come before it, provided it involves neither advisory nor executive action by it." Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 724, 49 S. Ct. 499, 502, 73 L. Ed. 918. In that case a tax had been assessed. The taxpayer had exhausted its remedies before the administrative branch of the government. Except and unless the courts intervened, the tax, which was claimed to be illegal, would be collected. A definite obligation to pay had already been created, and the existence of a "case or controversy" was found in the fact that (page 724 of 279 U. S., 49 S. Ct. 499, 502): "In the case we have here, there are adverse parties. The United States or its authorized official asserts its right to the payment by a taxpayer of a tax due from him to the government, and the taxpayer is resisting that payment or is seeking to recover what he has already paid as taxes when by law they were not properly due."

But what situation is presented where, as here, the tribunal of final jurisdiction in the administrative branch of the government has spoken, has declared that no tax is due,

and has set aside the assessment of the Commissioner? Thereby no obligation to pay has been created—no assessment of the tax remains. The only dispute surviving is one between executives in the same general branch of the government, the Commissioner, who maintains that a deficiency should have been assessed, and the Board of Tax Appeals, his administrative superior, which held that it should not have been. The taxpayer has become merely an interested spectator in this dispute between executives as to the proper performance of their duties; and he is interested, not because his pecuniary affairs are then directly involved, but, indirectly, because if the only then existing controversy be ultimately determined in accordance with the contentions of the subordinate official, a tax may thereafter be assessed. The settlement of such official disputes in the federal constitutional courts is wholly without precedent.

There can be no question that the Board of Tax Appeals is an executive or administrative tribunal of the government. The language of the act is "an independent agency in the executive branch of the government." 26 USCA § 1211. In the Old Colony Trust Company Case, supra, page 725 of 279 U. S., 49 S. Ct. 499, 502, the Supreme Court said: "The Board of Tax Appeals is not a court. It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of the Board has been had and decided." The only function which the Board exercises is purely administrative in character. Unless there has first been a deficiency assessment by the Commissioner, the Board is without jurisdiction [Jackson Iron & Steel Co. v. Commissioner, 54 F.(2d) 861 (C. C. A. 6)]; and the only jurisdiction expressly conferred upon the Board by law is "to redetermine the correct amount of the deficiency." 26 USCA § 1048c.

It is said that both the act and the Old Colony Trust Company Case (by the quotation here last cited) contemplate that the Commissioner shall remain "the authorized representative" of the United States to assert its claim to the tax even after reversal by the Board of Tax Appeals, that the Board is not the administrative superior of the Commissioner, but an independent tribunal exercising judicial or quasi judicial powers in appellate proceedings. Where the action of the Commissioner has been affirmed, in whole or in part, it is proper enough that the Commissioner should remain the spokes-

---

[3] It was thought unnecessary to discuss the question of jurisdiction where the court affirmed the decision of the Board of Tax Appeals, and in no previous case in which I sat was the court inclined to reverse the decision of the Board upon petition by the Commissioner.

man of the government to assert the right to collect the sum found due, but as such he is merely a formal party. The governmental representative might as well be the Treasurer, the collector, or any other official whom Congress might care to designate for this purpose. A case or controversy then exists. But it would seem to me that, after reversal by the Board, if such action is administrative and not judicial, the Commissioner may be made the "authorized representative" of the United States to continue the case or controversy in constitutional courts only if the decision of the Board of Tax Appeals does not act directly upon the assessment, to affirm, set aside, or modify it; that is, only if the decision of the Board is merely advisory, and the original assessment continues in full force, unaffected by the Board's "redetermination." Perhaps in that event the administrative branch of the government might be said to be still asserting its right to tax and the petition of the Commissioner to be in the nature of an enforcement of this right.

Conceding the fullest degree of the Board's independence of the Commissioner of Internal Revenue and the Treasurer of the United States, it would seem clear to me that its function is not merely advisory, but that its decision operates directly to affirm, set aside, or modify the assessment of the tax, that the correct amount of the deficiency is thereby administratively "redetermined," although it may be fixed at nothing, and that, being an "agency in the executive branch of the government" with power to review and revise the action of the Commissioner in the same general branch, and both thus performing administrative functions, the Board can only be considered as the administrative superior of the Commissioner. To regard it as anything else would be to introduce an anomaly into our law, and to run contrary to the principle of strict division of powers into legislative, executive, and judicial. Nor can I recognize any effect in modification of function arising from the fact that the Board's jurisdiction is, in a very true sense, appellate; nor attribute any force whatever to the fact that the Board is not interested in the "collection" of taxes. These matters have to do solely with a distribution of administrative powers among executive officers, and do not affect the fundamental nature of the duties performed. The test remains whether the Board performs supervisory administrative functions.

The view just expressed is supported by the recent decision of the Supreme Court in Federal Radio Commission v. General Electric Co., 281 U. S. 464, 467, 50 S. Ct. 389, 390, 74 L. Ed. 969, where it was said (the italics are mine): "We think it plain from this resumé of the pertinent parts of the act that the powers confided to the commission respecting the granting and renewal of station licenses are purely administrative, *and that the provision for appeals to the Court of Appeals does no more than make that court a superior and revising agency in the same field.* The court's province under that provision is essentially the same as its province under the legislation which up to a recent date permitted appeals to it from administrative decisions of the Commissioner of Patents." What is there said with reference to the Court of Appeals of the District of Columbia applies with equal force to the Board of Tax Appeals. I cannot see that the questions there involved were any more or less "purely administrative" than those decided by the Board of Tax Appeals. Both are interested only in the execution and administration of the acts of Congress. See, also, Butterworth v. United States ex rel. Hoe, 112 U. S. 50, 60, 5 S. Ct. 25, 28 L. Ed. 656.

Does it in any way affect the situation that the Board of Tax Appeals is called upon, in the performance of its administrative duties, to exercise judicial or quasi judicial functions? I think not. This is no more than has been done by other administrative officers, boards, and commissioners since the very inception of our government; and since the early case of United States v. Ferreira, 13 How. 40, 48, 14 L. Ed. 42, and even before that time, it has been consistently recognized that this neither invalidates the administrative action, as in effect constituting a delegation of judicial powers to an executive officer, in the constitutional sense, nor gives to Congress the power to require constitutional courts to review the administrative decisions so reached. In United States v. Ferreira, supra, the court says, in commenting upon the executive exercise of the judicial function: "The powers conferred by these acts of Congress upon the judge as well as the Secretary, are, it is true, judicial in their nature. For judgment and discretion must be exercised by both of them. But it is nothing more than the power ordinarily given by law to a commissioner appointed to adjust claims to lands or money under a treaty; or special powers to inquire into or decide any other particular class of controversies in which the public or individuals

may be concerned. A power of this description may constitutionally be conferred on a Secretary as well as on a commissioner. But is not judicial in either case, in the sense in which judicial power is granted by the Constitution to the courts of the United States." See, also, Reetz v. Michigan, 188 U. S. 505, 507, 23 S. Ct. 390, 47 L. Ed. 563; Tracy v. Commissioner, 53 F.(2d) 575, 578 (C. C. A. 6).

Thus we see that, in spite of its independence of other administrative departments, bureaus, or officers, and its exercise of judicial functions in the performance of the duties imposed upon it, the Board of Tax Appeals cannot be considered as other than an administrative agency, the superior of the Commissioner of Internal Revenue · in the same field. The question remains whether Congress may authorize and require a review by constitutional courts of the United States of the administrative action of the Board, where, by virtue of the very action to be reviewed, the assessment has been nullified and no obligation to pay a tax exists. In my opinion, this question must be answered in the negative. Where a federal administrative decision creates no pecuniary obligation upon the part of the petitioner or appellant, or denies no clear right to a citizen and litigant, in which he is protected by the constitution or laws of the United States, no "case or controversy" in the constitutional sense can exist as between such citizen and the federal government. A difference of opinion may exist between the citizen and a subordinate federal officer, and between superior and subordinate federal officers, as to the proper intent, scope, and effect of legislation, but this does not constitute a "case or controversy." Under such circumstances, an appeal or right of review may be given to legislative courts, but, in the language of the Supreme Court, constitutional courts "cannot be invested with jurisdiction of that character, whether for purposes of review or otherwise." Federal Radio Commission v. General Electric Co., supra (page 469 of 281 U. S., 50 S. Ct. 389, 390). See, also, Keller v. Potomac Electric Power Co., 261 U. S. 428, 442–444, 43 S. Ct. 445, 67 L. Ed. 731; Muskrat v. United States, 219 U. S. 346, 360, 361, 31 S. Ct. 250, 55 L. Ed. 246.

No good purpose would be served by reviewing in detail the numerous decisions upon this subject. To do so would extend this dissent beyond its proper confines. It should suffice to say that, as I view the situation, a petition to review the action of an administrative board or commission, under the circumstances here noted, must be classified either as an appeal to a constitutional court in, and as a part of, an administrative proceeding, or as a means for obtaining from the constitutional courts a purely advisory or declaratory judgment which may guide the administrative officers in the then present and future exercise of their duties. No other alternative has been suggested. Under neither view can this court be invested with jurisdiction. As to declaratory judgments, see particularly Muskrat v. U. S., supra; Liberty Warehouse Co. v. Grannis, 273 U. S. 70, 47 S. Ct. 282, 71 L. Ed. 541; Willing v. Chicago Auditorium Association, 277 U. S. 274, 48 S. Ct. 507, 72 L. Ed. 880. As to advisory judgments, if any true difference exists in connection with administrative affairs, see Hayburn's Case, 2 Dall. 409, 1 L. Ed. 436; United States v. Ferreira, 13 How. 40, 14 L. Ed. 42; and a completely unbroken line of authorities down to the present date. As to appeals for administrative purposes, as such, see Federal Radio Commission v. General Electric Co., supra; Postum Cereal Co. v. California Fig Nut Co., 272 U. S. 693, 47 S. Ct. 284, 71 L. Ed. 478; Keller v. Potomac Electric Power Co., supra.

The indication from each and all of these controlling authorities, in my opinion, is that this court should refuse to accept jurisdiction of a petition to review brought by the Commissioner of Internal Revenue. It is at least a striking coincidence that in the only three Supreme Court cases brought to our notice which refer to or discuss the constitutionality of an appeal or review of administrative action sought by a federal officer or commission functioning in the legislative or administrative field,[4] and here exactly comparable to the Commissioner of Internal Revenue, the Supreme Court has denied to Congress the right to provide for such review by federal courts created under article 3, section 1, of the Constitution. United States v. Ferreira, supra; Keller v. Potomac Electric Power Co., supra; Federal Radio Commission v. General Electric Co., supra. I see no reason to depart from the course so indicated.

---

[4] U. S. v. Klingenberg, U. S. v. Passavant, and U. S. v. Lies, cited in the majority opinion, do not discuss the constitutional question.